# SPANGLER GEISELMAN vs. GEORGE SCHMIDT.

*Pedestrian Struck by a Wagon at a Street Crossing—Questions of Defendant's Negligence and Plaintiff's Contributory Negligence for the Jury—Proof of Defendant's Ownership of Wagon—Presumption as to Driver's Employment—Evidence.*

Plaintiff's evidence showed that early on a winter morning he attempted to cross a street at a corner where it was intersected by another street, electric railway tracks being on both streets; that after waiting for cars to pass, and looking out, he started across and was struck by defendant's milk wagon, which was being driven at full speed over the crossing and which plaintiff did not see in time to avoid the injury. The defendant's evidence was that the plaintiff walked into the wagon as it was passing him. *Held,* that the questions of defendant's negligence and of the plaintiff's contributory negligence were properly left to the jury, and that the evidence does not establish plaintiff's contributory negligence as matter of law.

In order to prove the ownership of a wagon by the defendant, the City Collector of Licenses may testify, from the records of his office, that licenses for wagons were issued to the defendant for a certain year.

In an action to recover damages for personal injury, the plaintiff's wife may testify that he complained to her of his suffering from bodily injuries.

When the plaintiff in an action to recover for injury caused by the negligent driving of a wagon has offered evidence to show that the horse and wagon belonged to defendant, the jury may reasonably infer that the person driving the wagon at the time was the defendant's agent.

Negligence is the failure to do what a person of ordinary prudence would have done under the particular circumstances, or the doing of what such a person under such circumstances would not have done.

*Decided November 15th, 1907.*

Appeal from the Superior Court of Baltimore City (NILES, J.), where there was a judgment for the plaintiff for $500.

The cause was argued before BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*William G. Towers* (with whom was *Harry B. Wolf* on the brief), for the appellant.

*William B. Smith,* for the appellee.

BURKE, J., delivered the opinion of the Court.

This is a negligence case. It was instituted in the Superior Court of Baltimore City by George Schmidt against Spangler Geiselman and Annie Geiselman, his wife, to recover damages which he alleges he suffered in consequence of the negligence of the servant of the defendants in driving a milk wagon belonging to the defendants. The injuries were received on the 13th day of January, 1906, at the intersection of Broadway and Eastern avenue, two public streets of Baltimore City. The declaration alleges that at the time mentioned the servant of the defendants in the regular course of his employment and while he was in charge of and engaged in driving a horse hitched to a wagon belonging to the defendants, in a reckless and negligent manner ran into and knocked down the plaintiff and seriously injured him; that the plaintiff was using due care, and that the injury was caused by the negligence of the defendants driver and servant. To this declaration both defendants pleaded that they did not commit the wrongs alleged. The trial resulted in a verdict and judgment against Spangler Geiselman, and from that judgment he has appealed. At the conclusion of the plaintiff's case the Court directed a verdict in favor of Annie Geiselman, which was accordingly rendered by the jury.

That the plaintiff was quite severely, and perhaps permanently injured, does not admit of a question upon the evidence. The fact of his injury and its serious character was practically conceded by the defendant, and this feature of the case need

not be considered. The injury occurred about six o'clock in the morning while the plaintiff was on his way to his work at Locust Point. There is, as is usual in cases of this nature, much conflict in the testimony of the witnesses as to the exact circumstances under which the plaintiff was hurt. But if the testimony adduced on part of the plaintiff be accepted (and the jury did give it credence) the case was one proper for their consideration.

There are two tracks of the United Electric and Railways Company at the intersection of Broadway and Eastern avenue, the cars on these tracks running to and from Highlandtown, and there are also two tracks of the same company on Broadway crossing Eastern avenue. There is evidence tending to show that when the plaintiff reached the crossing at Broadway and Eastern avenue, and started to go over, two cars of the Highlandtown line were close to the crossing, one going in each direction, and that he stopped to let them pass before attempting to cross. Samuel Geiselman, who was in charge of the wagon gives this account as to how the accident occurred : "Half-past five I had to serve up around the East Canton and then come in. I always stopped before I left again, and I live two blocks from where this accident occurred. And as I was nearing Broadway a couple of hundred feet from Broadway I turned out to leave the car pass turning on the right side * * *. This old man was standing on the curb there, and I had seen him and was barely passing him, and after the horse had passed him he stepped down * * *. This old man must have come in contact with the horse's back feet and got him excited and off he went; it got me excited when I seen the old man come down, the wheels didn't go over him, the horse tread on him and knocked him down and got me excited as well as the horse and off he went." He further testified that the car stopped on the corner and when it was starting, the wagon just came up even with the car. He further testified as follows : "He ran into me, I didn't run into him. He walked right into the horse. How could I help it when the man walked right into the horse? That would happen to anybody."

This was the only witness on the part of the defendant who attempted to state how the injury was received. But over against this we have the testimony of John Rimbach, who was present and saw the collision. He testified that the plaintiff was in the act of crossing, and had reached the middle of the south track when he was hurt. When asked to state what he saw, he said: "I just heard a whip crack, and looked out Eastern avenue and saw a wagon *going full speed,* and as it crossed Broadway the front part crossed the tracks and knocked the man down and went on, didn't stop." The plaintiff testified that he was careful and cautious and did not see the wagon in time to avoid the injury. The early hour of this winter morning, the passing of the cars which probably shut out his view of the approaching wagon, and the rapidity with which the wagon was driven, if the testimony of Rimbach be believed, may readily account for the inability of the plaintiff to have avoided the injury under the circumstances.

During the course of the trial four exceptions were reserved by the defendant to rulings of the Court upon questions of evidence. When the evidence on both sides was closed, the plaintiff presented four and the defendant eight prayers for instruction to the jury. The Court granted the plaintiff's first, second and fourth prayers, and refused his third. The defendant's first, second, third and fourth prayers were refused, his eighth was granted, and his fifth, sixth and seventh were amended and granted as modified. The action of the Court upon the prayers constitutes the defendant's fifth bill of exceptions.

There was no error in the rulings of the Court upon the admission of testimony. The first and second exceptions were taken to the admission of certain testimony of J. Spencer Clarke, the collector of water rents and licenses of Baltimore City. The Court permitted this witness, from the record kept in his office, to testify that three licenses for one horse wagons were issued for the year 1906 to S. Geiselman, 1836 Eastern avenue, this being the residence of the defendant. It was the duty of the witness, as a municipal officer, to

issue these licenses to the owner of the wagons, and the record to which objection was made was one which was kept in connection with the performance of his official duty.   He was required by law to issue the licenses in the name of the owner, and to keep the numbers in consecutive order and so record them.   Under these circumstances the evidence was admissible. 2 *Taylor on Ev.*, 1354, 1355.   The third exception was taken to the ruling of the Court in allowing Mrs. Schmidt, the wife of the plaintiff, to testify to the fact that the plaintiff complained of suffering from his injuries.   As the declarations of bodily pain and suffering as the result of injury are always admissible, there was no error in this ruling.   There was no reversible error in the ruling on the fourth exception, as it was proved by another witness, and there was no attempts at denial, that there was an electric light burning at the scene of the accident.

2. This brings us to the consideration of the main questions in the case which were raised under the prayers.   The defendant by his first, second and third prayers sought to have the case withdrawn from the consideration of the jury upon three grounds; first, because the plaintiff offered no evidence legally sufficient to show negligence on the part of the driver; second, that there was no evidence legally sufficient to show that the driver was a servant or agent of the defendant; thirdly, because the plaintiff had directly contributed to his own injury.   Negligence being the gravamen of the action, the burden was upon the plaintiff to produce evidence tending to prove, (a) That the driver was negligent, (b) That *that* negligence caused the injury.   Negligence is the failure to do what a person of ordinary prudence would have done under the circumstances of the situation, or doing what such a person, under such circumstances, would not have done.   Apart from the situation and surrounding circumstances no act, or omission can be pronounced negligent.   That situation and all the surrounding conditions in which one acts, or omits to act must necessarily be considered before negligence *vel non* can be predicated of his act, or omission.   The standard of duty by which acts or

omissions are measured is the care and caution of the *average prudent man*, and he who is to judge must place himself as near as may be in the position of him whose conduct is under consideration. The degree of care and caution, which one is required to observe, must of necessity vary with the act to be done, or with the different conditions, or changing circumstances of the particular situation. But no matter what the situation is the care and caution of the prudent man is the accustomed and proper measure of duty. If this care has not been observed in a given case, and in consequence thereof injury has ensued to the person, or property of another, a case of primary actionable negligence is presented. The general rule is that the question of negligence must be left to the jury. As the jury, in legal contemplation, is composed of men of average ability, intelligence, and practical experience in the affairs of life, it is regarded as the appropriate tribunal to pass upon the question of primary, or secondary negligence, and the Court will not, except in rare cases, take that question from their consideration.

When these principles, which have been well settled by the adjudged cases, are applied to the facts of this case, it certainly cannot be contended that there was no evidence of negligence in the driver of the wagon; nor can it be said that there was any such prominent and decisive act of negligence on the part of the plaintiff as would have warranted the Court in saying that he could not recover. If the testimony of Rimbach, which we have referred to, be true, and the Court was bound to assume its truth, there was certainly evidence tending to show great negligence in the driver. He was bound to use reasonable care, and was bound to anticipate the presence of other persons on the street who had an equal right with himself to be there, and yet, according to the testimony of this witness, he was driving at a rapid rate of speed over this crossing.

We have heretofore detailed the circumstances under which the plaintiff attempted to cross, and, in our opinion, his conduct did not amount to contributory negligence in law, but its

legal effect upon his right to recover was properly left to the jury under the instructions granted. It was their province to say under these instructions, which submitted the questions both of primary and contributory negligence fairly and fully to them, whose negligence caused the injury.

There is one remaining question. Was there any evidence upon which the jury could reasonably conclude that the driver of the wagon was a servant of the defendant? The plaintiff had offered evidence tending to show that the defendant was the owner of the wagon. The sign "Geiselman's Great Eastern Milk Dairy" was displayed upon the wagon, and three licenses had been issued in the name of the defendant for one horse wagon for the year 1906. These facts, in connection with the testimony of Franklin Hall, who shod the horses, tended to show that the wagon and horses belonging to the defendant. But the defendant's ownership of the horse and wagon was denied, and it was sought to evade the responsibility by showing that the horse and wagon belonged to Norman Geiselman, a son of the defendant, and that Samuel Geiselman was at the time a servant and agent of Norman, and not of the defendant. This, if found to be true, would have constituted a good defense, but this was a question for the jury, and was left to them under the instructions.

The plaintiff having offered evidence tending to prove that the horse and wagon belonged to the defendant the jury might reasonably conclude that the driver was his agent. In the case of the *Vonderhorst Brewing Company* v. *Amrhine*, 98 Md. 411, this Court said: "It is a reasonable presumption that a person driving a team of another is the agent and servant of the owner of the team, unless it be shown by the owner of the team that the contrary is the fact."

*Judgment affirmed with costs above and below.*