# GLENN M. RILEY

## vs.

# STATE OF MARYLAND, For the Use of Josephine M. Walker.

*Expert Testimony—Negligence—Pedestrian Injured by Automobile—Evidence and Instructions.*

A physician cannot testify as an expert as to whether a man could, by the impact of a vehicle, be thrown a named distance without showing signs of external injury.                    p. 141

It was proper to instruct the jury that if, on a certain date, plaintiff's husband, at a named street intersection, was injured by being struck and knocked down by an automobile operated by defendant, of which injuries he thereafter died, and said injuries resulted directly from the want of ordinary care and prudence of the defendant in operating and managing said automobile, and not from the want of ordinary care and prudence on the part of said deceased, directly contributing to said injury, the plaintiff is entitled to recover.            p. 142

The act relied on to establish as a matter of law the existence of contributory negligence must be distinct, prominent, and decisive, and one about which ordinary minds would not differ in declaring it to be negligent.                    p. 143

That the plaintiff's decedent, killed by defendant's automobile while he was crossing diagonally at a street intersection, did not have the right of way over the automobile, did not justify a peremptory instruction for defendant.            p. 144

*Decided January 12th, 1922.*

Appeal from the Court of Common Pleas of Baltimore City (BOND, J.).

Action by the State of Maryland, for the use of Josephine M. Walker, against Glenn M. Riley. From a judgment for plaintiff, defendant appeals. Affirmed.

The first, second and third exceptions involved questions sought to be asked of a medical witness who had testified that he could find no external evidences of injury on deceased, and the questions were as to the possibility that a man could be thrown such a distance as deceased was alleged to have been thrown, without showing any external injuries.

Among the prayers submitted were the following:

The granted prayers were as follows:

*Plaintiff's First Prayer.*—The Court instructs the jury that if they shall find from the evidence that on or about the 20th day of December, 1919, Walter B. Walker, the husband of the equitable plaintiff, while crossing North Avenue at or near its intersection with Pennsylvania Avenue, public streets of Baltimore City (if they so find), was injured by being struck and knocked down by an automobile operated by the defendant, of which injuries he thereafter died, and that said injuries resulted directly from the want of ordinary care and prudence of the defendant in operating and managing said automobile, and not from the want of ordinary care and prudence on the part of the said Walter B. Walker, directly contributing to the said injuries, then the equitable plaintiff is entitled to recover in this action.

*Plaintiff's Second Prayer.*—The court instructs the jury that if they find a verdict for the plaintiff they may, in estimating the damages to be allowed, consider what was the pecuniary loss which the said Josephine M. Walker, widow, has sustained by reason of the negligent killing of her said husband, Walter B. Walker, and may consider the reasonable probabilities of the continuance of the joint lives of the said Walter B. Walker and the said Josephine M. Walker, but for said negligent killing of her husband, and may allow her such damages as in the judgment of the jury would compensate her for such pecuniary loss as she has sustained, and reasonably will sustain, by reason of said killing of her husband.

*Defendant's First Prayer.*—The defendant prays the court to instruct the jury that if the jury find that at the time and place mentioned in the evidence, the defendant herein was operating his car in careful fashion and that Walter B. Walker by his own negligence received the injuries which resulted in the death of said Walter B. Walker, then the verdict of the jury shall be for the defendant.

*Defendant's Second Prayer.*—The defendant prays the court to instruct the jury that if the jury find that at the time and place mentioned in the evidence the defendant was operating his automobile in a negligent manner, but that Walter B. Walker, by his own negligence, contributed to receiving the injuries mentioned in the evidence, then the verdict of the jury shall be for the defendant.

*Defendant's Sixth Prayer.*—The defendant prays the court to instruct the jury that if the jury find that the deceased was proceeding diagonally across the intersection of North Avenue and Pennsylvania Avenue, or in some manner otherwise then directly across from curb to curb, then the deceased Walker did not have right of way over the automobile of the defendant, *and, therefore, the verdict must be for the defendant.* (The words in italics were struck out by the court.)

*Defendant's Eighth Prayer.*—The defendant prays the court to instruct the jury that if the jury find that the deceased Walker could by the exercise of a reasonable degree of care have avoided the accident then the verdict of the jury must be for the defendant.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Charles Markell* and *George Ross Veazey,* for the appellant.

*Charles W. Main* and *Benj. H. McKindless,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This action was brought by the State, for the use of the widow of Walter B. Walker, in the Court of Common Pleas of Baltimore City, to recover damages for the death of her husband, alleged to have been caused by the negligence of the defendant, in operating an automobile upon North Avenue at or near the intersection of Pennsylvania Avenue, two of the public highways of Baltimore City.

The declaration is in the usual form in negligence cases, and the bill of particulars, filed with it, states that Walter B. Walker died as a result of being run into and struck by an automobile operated by the defendant in such a negligent and careless manner as to strike and run into him while he was carefully and prudently upon North Avenue at or near the intersection of Pennsylvania Avenue, both of those avenues being public highways of Baltimore City, and without any negligence on the part of Walker directly thereunto contributing, resulting in the loss of the pecuniary benefit which the equitable plaintiff received from her husband in his lifetime and which she would have continued to receive but for his death; and that the equitable plaintiff is his widow, and at the time of the death of her husband she was twenty-nine years of age and her husband was thirty-seven years of age.

The record contains four exceptions, three of which are to the rulings of the court on questions of evidence, and the fourth to the rulings of the trial court upon the prayers, relating to negligence and contributory negligence.

The court granted the plaintiff's first and second prayers, and the defendant's first, second and eighth prayers, but refused the defendant's third, fourth, fifth and seventh prayers. The defendant's sixth prayer was modified by the court and granted as modified.

The principal contention upon the part of the appellant is that there was error in the rulings of the court, in granting the plaintiff's first and second prayers, and in refusing his third, fourth, fifth and seventh prayers, and in modifying his

sixth prayer. The action of the court in its rulings on those prayers are presented by the defendant's fourth exception.

The trial resulted in a verdict in favor of the plaintiff for the sum of $3000, and from a judgment on this verdict the defendant has appealed.

There was no error in the ruling of the court on evidence, that is, in sustaining objections to the questions asked Dr. Stein, and set out in the first, second and third exceptions.

The questions were objectionable because the witness did not possess the requisite qualification to speak as an expert, and the subject matter was not proper for expert testimony. The rule, as to the admission of this kind of testimony, is stated in several recent cases in this Court, and among them will be found the cases of *Dashiell* v. *Griffith,* 84 Md. 377; *United Rys. Co.* v. *Corbin,* 109 Md. 450, and *Susquehanna Transmission Co.* v. *Murphy,* 131 Md. 350.

In *Chateaugay Ore and Iron Co.* v. *Blake,* 144 U. S. 476, the Supreme Court said that how much knowledge a witness must possess before he can be allowed to give his opinion as an expert must, in the nature of things, be left largely to the trial court and its rulings will not be disturbed unless clearly erroneous.

The testimony, however, sought to be introduced by the three questions was subsequently given by the same witness later in the trial, and admitted without objection.

The questions, it will be seen, were also substantially answered by the testimony of Dr. Charles Reifsnider, a witness on the part of the defendant, and the appellant was not, therefore, injured by the rulings on evidence, as set out in the first, second and third exceptions. *District Nat. Bank* v. *Mordecai,* 133 Md. 428; *Hall* v. *Trimble,* 104 Md. 317.

This brings us to a consideration of the principal questions in the case, and these are presented by the rulings on the prayers.

The plaintiff's first and second prayers are free from objection and have been approved by numerous decisions of this Court in similar negligence cases.

By the first prayer the jury were instructed that, if they shall find from the evidence that, on or about the 20th of December, 1919, the husband of the equitable plaintiff, while crossing North Avenue at or near its intersection with Pennsylvania Avenue, public streets of Baltimore City (if they so find), was injured by being struck and knocked down by an automobile operated by the defendant, of which injuries he thereafter died, and the injuries resulted directly from the want of ordinary care and prudence of the defendant in operating and managing the automobile and not from the want of ordinary care and prudence on the part of Walker directly contributing to the injuries, then the equitable plaintiff is entitled to recover in this action.

The first prayer properly left it to the jury to find whether the injury from which Walker died resulted from a want ot ordinary care on the part of the defendant in operating the automobile, and without any contributory negligence on the part of the plaintiff. This prayer correctly stated the law applicable in such cases. *Balto. Traction Co.* v. *Wallace,* 77 Md. 435; *Central Ry. Co.* v. *Coleman,* 80 Md. 336; *Epstein* v. *Ruppert,* 129 Md. 440.

The plaintiff's second prayer correctly stated the measure of damages, and has been approved by this Court in a number of cases. *Balto. & Reisterstown Turnpike Co.* v. *State,* 71 Md. 573; *Balto. & O. R. R. Co.* v. *Strunz,* 79 Md. 335; *Baltimore* v. *Biggs,* 132 Md. 126.

The defendant's third, fourth, fifth and seventh prayers, if granted, would have withdrawn the case from the consideration of the jury, on the question of the negligence of the defendant and the contributory negligence of the plaintiff. We think, these questions, under the evidence disclosed by the record were ones for the determination of a jury and these prayers were properly refused.

The general rule of law is wll settled that the question of negligence must be left to the determination of the jury, and the court will not, except in a very clear case, take it from their consideration. *Burke* v. *Baltimore,* 127 Md. 554;

*Geiselman* v. *Schmidt,* 106 Md. 585; *Epstein* v. *Ruppert,* 129 Md. 440; *Parker* v. *Power,* 127 Md. 598.

The general rule is also established, by many cases in this Court, that the act relied on to establish as a matter of law the existence of contributory negligence must be distinct, prominent, and decisive, and one about which ordinary minds would not differ in declaring it to be negligent. Where the nature and attributes of an act relied on to show negligence, contributing to an injury sustained, can only be determined correctly by considering all the attending and surrounding circumstances of the transaction, it falls within the province of the jury to pass upon and characterize it, and it is not for the Court to determine its value as a matter of law. *Balto. & O.* v. *Hendricks,* 104 Md. 79; *McCarthy* v. *Clark,* 115 Md. 468; *Nat. Life Ins. Co.* v. *Fleming,* 127 Md. 185; *Baker* v. *Md. Coal Co.,* 84 Md. 27; *Wallring* v. *James,* 136 Md. 407.

There is much conflict in the testimony of the witnesses, examined in this case, as to the surrounding circumstances under which the husband of the equitable plaintiff was struck and injured, while walking across North Avenue, at the intersection of Pennsylvania Avenue, in Baltimore City. He died the same night of the accident at the Maryland University Hospital, where he was taken after the accident. The cause of death, as stated by the physicians, was extradural and sub-dural hemorrhage, injury to brain substance due to a fractured skull. The injury found upon the head was sufficient to cause death.

The testimony shows that North Avenue runs east and west, and is a very wide street. Pennsylvania Avenue is also a wide street and runs northwest and southeast. There are two car tracks in the middle of North Avenue and also two on Pennsylvania Avenue. On the northwest corner of North and Pennsylvania Avenues there is a bank building; on the northeast corner Hendler's "Ice Cream Parlor"; on the southeast corner a United Railway's car barn, with a peanut vender's stand at the North Avenue curb, and on the southwest corner Schanze's Drug Store.

The witness Dorsey, who talked with the deceased at the bank building on the northwest corner of the two avenues before starting to cross the street, going to the southwest corner towards Schanze's drug store, testified as follows: Mr. Walker was crossing after him. He was about one foot behind the witness and followed right behind him. Witness started from the bank on the northwest corner and headed for the southwest corner towards Schanze's drug store. "Mr. Walker was about one foot behind my heels. After I had crossed the car tracks I went to turn around and I saw a machine coming at a terrific rate, and when I turned around it looked to be about ten feet from me, and I made a jump and Mr. Walker, by being behind me, caught the blow." When the witness looked around Mr. Walker was three feet from where the machine was coming up at; he was on the ground. He was on the ground towards the north side of Pennsylvania Avenue nearer to the bank, when he was struck. At that time witness had crossed the tracks on North Avenue.

"Q. Was it going fast or slow after it struck Mr. Walker and when you turned around and looked? A. When I turned around and looked, when he put on his brakes it slid and did not stop until it had crossed Pennsylvania Avenue. Q. How far was that from the place where it struck Mr. Walker? A. Mr. Walker was lying like—you know the pavement going up Pennsylvania Avenue going north, the machine was on the other side of the street. Q. It had crossed over the street? A. Yes, crossed the car tracks and the hind wheels were up with the curbstone, on the other side of the street. It was light at the intersection and you could see across the street without any difficulty and up and down North Avenue. The witness went back and helped to put Mr. Walker in the automobile. There was a lot of blood around his face; he was unconscious and did not make a sound." He further testified that the deceased had a bundle under his arm; that the witness drives a car and knows the speed of a car, and that the automobile at the time it struck Walker was going thirty-five miles an hour.

He testified upon cross-examination: Mr. Walker was picked up right in the middle of the two car tracks on North Avenue; he was about even with the south curbstone. The automobile was not running on the car tracks; it was not on either track; it was running between the curbstone and the car track on the south side. Mr. Walker, however, was picked up between the two car tracks. "Q. What part of the car struck Mr. Walker? A. It was the lefthand side of the car. Q. The side or the front? A. The front. I guess you would call that the northeast side at the fender."

The witness did not see the automobile strike Mr. Walker, but Mr. Walker was lying on that side. The automobile was entirely south of the North Avenue car tracks and was south of the guard rail at the southwest corner of North Avenue. It was between the guard rail and the curb. The automobile was coming right in a straight line across Pennsylvania Avenue. There was nothing between the witness or Mr. Walker and the automobile which would obstruct the view.

The witness Spielman testified that he did not see the deceased before he was hit, but after he was hit the witness saw him lying about a foot away from the north rail of the south track on North Avenue. He was east of the southbound track on Pennsylvania Avenue and about a foot and a half away from it. He was lying just where the north rail of the eastbound track on North Avenue intersects the east rail of the southbound track on Pennsylvania Avenue. He was lying between these rails. Witness did not see the automobile that struck Mr. Walker before it did strike him. Witness was talking to a young man on the corner, remarking how bitterly cold it was. The witness had been talking about a minute or two when the other man said that some one was hit, and the witness looked up and saw Mr. Walker lying between the two car tracks, and he went over there. The witness stated that he saw no automobile before the accident and heard no sound of horns or anything of that kind. After the accident the automobile was on the east corner of North Avenue and Pennsylvania Avenue. It was across Pennsyl-

vania Avenue, about two feet past the curbstone. The witness did not know what kind of automobile it was, but it was a large car. Witness identified Mr. Riley as the person driving the car. The automobile remained at the corner where the witness first saw it for about a minute. It was about fifty-five or sixty feet from where Mr. Walker was lying to the point where the witness saw the car at a standstill. The automobile was backed up to where Mr. Walker was lying. The accident occurred about midnight. It was light as daylight and you could see a man walking from a distance of about half a square. It was bitterly cold. Snow and ice were on the pavement and streets.

The testimony, it will be seen, on behalf of the defendant, as to how the accident occurred, is in conflict with that stated by the witnesses for the plaintiff, and it would serve no useful purpose to attempt, in this opinion, to reconcile it or to account for its conflict.

The law of the case, upon the questions of negligence and contributory negligence, was fully and fairly submitted to the jury for their finding, under the plaintiff's and defendant's granted prayers, and it was the province of the jury to determine whose negligence caused the injury from which Walker died. The reporter will set out the plaintiff's and defendant's granted prayers, in his report of the case.

The defendant's sixth prayer, as offered, was clearly defective, and was in conflict with a long line of decisions of this Court. As modified, it presented the defendant's case before the jury, upon the proposition of law submitted by it, in a more favorable light than was justified by the law. *Cook* v. *United Rys. Co.,* 132 Md. 558; *Magaha* v. *Hagerstown,* 95 Md. 62; *Bluthenthal* v. *May Advertising Co.,* 127 Md. 284.

Finding no reversible error in the rulings of the court below, the judgment must be affirmed.

*Judgment affirmed, with costs.*