AMERICAN OIL COMPANY *v.* ALBERT W. WELLS.
[No. 27, January Term, 1933.]

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

*Decided March 21st, 1933.*

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

The cause was argued before BOND, C. J., URNER, AD-KINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Edwin H. Brownley* and *Derlin McKindless,* with whom was *James H. Pugh* on the brief, for the appellant.

*Lansdale G. Sasscer,* with whom was *Albert M. Bouic* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

This case originated in the Circuit Court for Prince George's County and was removed to the Circuit Court for Montgomery County for trial. A judgment was entered by that court on the verdict of a jury in favor of the appellee (plaintiff below), from which this appeal was taken by the defendant. The facts necessary to be stated for recognition of the questions involved in the appeal are these:

The plaintiff, at the time of the injury for which damages were recovered, was and had been engaged in the conduct of a country store located near Upper Marlboro in Prince George's County. As an incident of the general mercantile business he sold gasoline and motor oils, which he purchased from different oil companies, among which was the appellant.

The tanks in which the gasoline was kept for sale were buried in the ground to a depth of about two and a half feet at a point about forty feet distant from the front of his store. The gasoline was drawn from these tanks by pumps located on what is described as a concrete "island," the pipes from the tank containing the gasoline coming through the concrete, and to which the pumps were attached, these pumps being from eight to ten feet distant from the tanks. There were three pipes coming from each tank: One, the fill pipe; another, the suction pipe; and the third, the vent pipe. When the pumps are removed these pipes extend some eight to ten inches above the surface.

In 1927 the plaintiff entered into a contract with the defendant to purchase and sell its gasoline; and between them was executed a conditional contract of sale whereby the defendant was to install a tank and pump upon the premises of the plaintiff, for which the plaintiff was to pay a stipulated price by making a deposit of twenty-five dollars, which, together with future payments of one cent a gallon on the gasoline sold, in no event to be less than ten dollars per month, was the contract means of fully paying for the tank and pump. Subsequently the plaintiff, learning that the defendant had installed for others gasoline equipment under more advantageous and favorable terms to the dealer, became dissatisfied and discontinued the purchase and sale of the defendant's gasoline. The plaintiff was charged and paid for all gasoline purchased by him at an advance of one cent a gallon over the regular price until he discontinued using the defendant's product. When the plaintiff ceased using the defendant's gasoline he pumped "the tank dry"; "there was a customer there and he pumped every drop he could get out of it, and never used it any more." On August 18th, 1928, the plaintiff by letter notified the defendant as follows: "I am sorry to have this matter called to your attention about the deposit which I put in for the pump, but as you would rather to demand the difference than to refund the money and have me to sell your gas, I shall have to have you take it out, but if you will refund the money I will continue selling

it, otherwise I will have you to take it out. I am sorry this had to happen as your gas seems to be such a good seller. I will give you ten days notice to either refund the money, or to remove the pump."

Subsequently the defendant, through its agents, had some conversation with the plaintiff, in which an attempt was made to settle their differences and have the plaintiff continue the sale of its gasoline, but without success; and some time in October of that year (1928) the defendant's employees detached the pump from the pipes leading from the tank, for the purpose of placing the pump with another customer a short distance from the plaintiff's place of business, thereby leaving, according to the plaintiff's evidence, the pipes, leading from the tank and protruding some inches above the surface, uncapped and open, and leaving the tank buried as above described, with one end of it about twelve inches from a similar tank of the Standard Oil Company. The tank and pipe remained in this position and condition for something more than a year, until December 21st, 1929. There was a water pipe which extended under the ground and projected through the concrete "island," with a spigot on the top, for use in servicing automobiles. This water pipe was about two and a half feet from the open uncapped pipes coming from the defendant's tank. About 7 or 7.30 o'clock in the morning of December 21st, 1929, it being a cold day, the plaintiff discovered that the water pipe was frozen. Not having any fire in the store, he obtained a part of a newspaper, twisted it, lighted one end of it, and passed it along the water pipe for the purpose of thawing the same. After once doing this, he found the water began to trickle; and upon the second application of the flame to the water pipe an explosion took place, resulting in his being knocked down, rendered temporarily unconscious, and seriously injured. For the injury thus occasioned the suit was instituted.

The declaration alleges: "The defendant installed a gasoline tank and pump of the ordinary type used for the sale of gasoline, upon the premises of the plaintiff about one mile from the town of Upper Marlboro, Prince George's County,

Maryland, according to an agreement between the parties, the said tank being buried beneath the ground and being the property of the defendant, and that afterwards, being notified by the plaintiff that the plaintiff would not handle the gasoline and other products of the defendant any longer, the defendant's agent, about the first of October, 1928, removed the said pump from the premises of the plaintiff, but left the said tank buried on the plaintiff's premises solely for the convenience of the defendant, the said agent assuring the plaintiff that everything would be left in a safe and satisfactory condition, and the said agent of the defendant carelessly and negligently left the pipe leading from the tank to the pump uncapped and exposed to the atmosphere and negligently failed to warn the plaintiff that there was some gasoline in the tank which the said pump would not remove which fact was unknown to the plaintiff but known to the defendant's agent, and that the explosive character of the above situation was also known to the defendant's agent and unknown to the plaintiff, all of which the said agent failed to warn the plaintiff, but left the dangerous condition existing upon the plaintiff's premises. That on or about the 21st day of December, 1929, while the plaintiff was in the act of thawing out a water pipe with a flame about eight feet distant from the said tank, using due care and diligence on his part, the contents of the said tank exploded due to the mixture of the gasoline negligently left in said tank by the defendant's agent as aforesaid, with the atmosphere through the uncapped pipe as aforesaid, which explosion knocked the plaintiff unconscious, cut his head open causing concussion of the brain, constant headache and dizziness, and otherwise bruising and permanently injuring the plaintiff, all of which injuries were directly caused by the negligence of the defendant, and without negligence on the part of the plaintiff, thereto contributing."

To this declaration the defendant demurred, the ground of the demurrer being that the allegations of the declaration showed such contributory negligence on the part of the plaintiff as to preclude recovery. There can be no doubt that a

declaration is demurrable if on its face it shows no legal liability on the part of the defendant, either by failing to specifically and definitely allege some negligent act or omission on the part of the defendant, or by alleging definite and specific acts constituting contributory negligence on the part of the plaintiff. In the last event the pleader pleads himself out of court. In the case of *East Brooklyn Box Co. v. Nudling*, 96 Md. 390, 54 A. 132, it was said: "Where the declaration clearly shows that the plaintiff was guilty of contributory negligence, advantage may be taken by demurrer, and an allegation in the declaration that he used due care will not save the declaration from being bad. 5 *Encyc. Plead & Prac.* 10." The declaration in that case alleged that the plaintiff's injuries were received "through the premature running and operation of the saw; that the premature running and operation of said saw was due to the defective and unskillful manner in which the same, and the connecting pulleys, belt, and shafting, had been erected and suffered to remain, of which the plaintiff then had no knowledge or information, and which the plaintiff, from lack of knowledge of machinery, could not by the exercise of due care, have ascertained; and that the accident was not due to any fault or want of care on the part of the plaintiff, who used due care and caution." After stating the rule, the court held that a demurrer to that declaration was properly overruled, and quoted from the case of *Rumpel v. Oregon Short Line R. Co.*, 4 Idaho, 13, 35 P. 700, wherein it was said: "We are not prepared to say, however, that under this complaint a state of facts could not be proven which would entitle the plaintiff to recover, and therefore we sustain the court in overruling the demurrer"; and further added: "We think this decision was grounded on common sense and in sound legal discrimination." In *Jeter v. Schwind Quarry Co.*, 97 Md. 696, 55 A. 366, 368, in which a declaration was attacked by demurrer on the ground that it clearly showed injury resulting from the act of a fellow servant, and in which the demurrer was sustained, Judge Pearce speaking for the court said: "The appellant relies in this aspect of the case upon

the case of *East Brooklyn Box Co. v. Nudling*, * * * where there was a demurrer to a declaration on the ground that it showed the plaintiff was guilty of contributory negligence, in which case we said, 'Where the declaration clearly shows the plaintiff was guilty of contributory negligence, advantage may be taken by demurrer'; but we sustained that declaration, because it did not clearly appear there was contributory negligence. Here, however, the averment is clear and emphatic that the negligence complained of was that of a fellow servant."

It will thus be seen that where the ground of demurrer is that the declaration alleges contributory negligence, it must clearly appear that the alleged act of plaintiff did, as a matter of law, constitute contributory negligence; that is to say, it must be such an act as reasonable men would not differ in declaring to be negligent; or, in other words, it must be such an act as, if proven, would justify the court in declaring it, as a matter of law, negligent, and granting a prayer instructing a verdict for the defendant on that ground. The language of the present declaration in that respect is that "while the plaintiff was in the act of thawing out a water pipe with a flame about eight feet distant from the said tank, using due care and diligence on his part, the contents of the said tank exploded due to the mixture of the gasoline negligently left in said tank by the defendant's agent as aforesaid, with the atmosphere through the uncapped pipe"; and in our opinion this does not constitute such a prominent, decisive, negligent act as would preclude recovery as a matter of law.

What we have said in reference to the demurrer applies with equal force to the lower court's refusal of the defendant's second, third, fourth and ninth prayers, all of which required an instructed verdict for the defendant on the ground of contributory negligence of the plaintiff. In our opinion, the question of contributory negligence, under the circumstances of this case, was one for the jury, and was properly submitted to them under the defendant's fifth prayer, which was granted, wherein the court instructed the jury that if

they found from the evidence that the accident complained of was in any degree owing to want of due care and caution on the part of the plaintiff directly contributing thereto, their verdict must be for the defendant.

The appellant specially excepted to the plaintiff's first prayer, which is the usual damage prayer, because there is no evidence in the case legally sufficient to show that the injuries received by the plaintiff disabled him from pursuing his ordinary occupation. This special exception, we think, was properly overruled, because the record discloses legal evidence sufficient to show, if believed by the jury, that the injuries received by the plaintiff did disable him from pursuing his ordinary occupation.

The defendant's granted prayers presented the case to the jury in as favorable a light as the defendant was entitled to have; and as we have found that all of the defendant's rejected prayers requesting a directed verdict on the ground of contributory negligence were properly refused, we find no error in the court's ruling on the prayers.

There is no dispute that at the time of the accident the tank was the property of the defendant and was located on the premises of the plaintiff. More than a year prior to the accident a portion of the equipment, to wit, the pump, the defendant by its agents had removed. The evidence as to whether the pipes were capped or uncapped from the time of such removal is in direct conflict, and presented a jury question. There is also evidence from which the jury could find that ordinary care on the part of the defendant required that these pipes, left open by the removal of the pump, be capped; that all of the gasoline could not be extracted from the tank by the pump which the defendant installed; and that the presence of a small quantity of gasoline and the vapors arising therefrom, when coming in contact with the atmosphere, created a lurking and hidden danger, which danger should have been known and was known to the defendant or its agents, while the plaintiff did not know and was not charged with such knowledge.

It is further contended by the appellant that, admitting the negligence of the defendant, such negligence was not the proximate cause of the accident. This contention could only be upheld under circumstances showing that the plaintiff, in using the torch at the place and under the circumstances here described, was guilty of contributory negligence. We have found that he was not so guilty, as a matter of law; and the jury, under proper instructions, have determined absence of guilt as a matter of fact. It is clear that if the negligent act of the defendant, in conjunction with the innocent and non-culpable act of the plaintiff, caused the accident, the defendant is nevertheless liable.

We have examined the exceptions to rulings on evidence; and find no error in respect to these rulings.

Exceptions Nos. 1 and 2 relate to the court's permitting testimony by the plaintiff that he had no knowledge of the presence of or danger from gases arising from the tank through the exposed pipe. These objections are predicated upon the theory that, as a matter of law, every country merchant who sells gasoline to users of automobiles over a period of years has expert knowledge of the qualities, properties and attributes of gasoline and the lurking dangers incident to abandoned gasoline tanks; and therefore he should not have been permitted to testify to his lack of such knowledge. Such an argument, in our opinion, is unsound; and there was no error in admitting this testimony.

Exceptions Nos. 3, 7 and 8 are to the admission of testimony tending to show disability on the part of the plaintiff from pursuing his usual occupation after the accident. From what we have said in reference to the special exception to the plaintiff's damage prayer, it will be seen that there was no error in admitting this testimony.

Exceptions Nos. 4 and 5 were to permitting testimony of a witness of many years' experience in the installation and removal of gasoline tanks and equipment, as an employee of one of the large oil companies, having in especial charge this branch of the work, that reasonable care and prudence required that the pipes be capped when the pump was removed

and the tank left abandoned in the ground, with a small quantity of gasoline therein, or none at all. There was no error in this ruling. The defendant's own witnesses, in testifying that they did cap the pipes when the pump was removed, also tend to corroborate the testimony of the expert.

Exceptions Nos. 6, 9 and 10 were to permitting what were claimed to be leading questions, and admitting on cross-examination testimony not brought out in chief. Such questions are largely in the discretion of the trial court; and we find no reversible error in any of those rulings.

. There being no error, the judgment will be affirmed.

*Judgment affirmed, with costs.*