TEXAS COMPANY ET AL. *v.* PECORA ET AL.
(Eight Appeals in One Record)
[No. 16, October Term, 1955.]

284

*Decided November 14, 1955.*

The cause was argued before DELAPLAINE, COLLINS and HAMMOND, JJ., NILES, J., Chief Judge of the Eighth Judicial Circuit, and KINTNER, J., Associate Judge of the Second Judicial Circuit, both specially assigned.

*William L. Marbury* and *Jesse Slingluff, Jr.,* with whom were *Kenneth C. Proctor* and *Piper & Marbury* on the brief, for the Texas Company.

*Paul Berman* and *Joseph O. Kaiser,* with whom were *John Grason Turnbull, Theodore B. Berman* and *Sigmund Levin* on the brief, for the Graces.

Submitted by *Clement R. Mercaldo* and *Ernest C. Trimble* for the Browns, who adopted the brief of the Graces.

*G. C. A. Anderson,* with whom were *John F. King* and *Anderson, Barnes & Coe* on the brief, for Joseph Wielgosz, Individually and Trading as the Joseph Wielgosz Company.

*Richard H. James,* with whom was *John L. Askew* on the brief, for the Pecoras.

KINTNER, J., by special assignment, delivered the opinion of the Court.

On March 17, 1950, Gary Grace and Curtis Brown, boys about seven years old, were badly burned by the explosion of a gasoline tank on a vacant lot in the Dundalk area of Baltimore County. The tank was the property of the Texas Company and had been placed on the lot by Joseph Wielgosz, a builder, who had removed it from a near-by lot owned by Forteno N. Pecora, Pauline Pecora and Pitt Pecora. Actions were filed in the Circuit Court for Baltimore County against the Texas Company, Wielgosz and the Pecoras on behalf of each boy for personal injuries and a parent of each for expenses and loss of services. The cases were consolidated and after a jury trial lasting eight days resulted in verdicts for

each boy and each parent against the Texas Company and in favor of the other defendants.

There are eight appeals from judgments entered on the verdicts. The Texas Company appealed from the judgments in favor of the Pecoras, the judgments in favor of Wielgosz in each case and the judgments against it of Gary Grace and his father and Curtis Brown and his mother. Gary Grace and his father appealed from the judgments in favor of Wielgosz and the Pecoras. Curtis Brown and his mother appealed from the judgments in favor of the same defendants. The latter two appeals have not been argued and need not be considered. The questions in the case are (1) whether there was sufficient evidence for the jury to find negligence on the part of the Texas Company contributing to the injuries; (2) whether the jury could find a verdict against the Texas Company and exonerate Wielgosz and the Pecoras; and (3) whether the charge of the trial judge fairly and correctly presented the case to the jury.

The Pecoras owned two lots of land in Inverness, Baltimore County, located respectively on the southeast and the southwest corners of the intersection of New Deal Place and Midway. The latter lot was vacant. On the former lot was located a grocery store operated by them. To the east of the store on the same lot was a filling station operated by them. The equipment of this station consisting of two pumps and three 550 gallon under-ground tanks was leased to F. N. Pecora by the Texas Company on April 2, 1941, for use in the sale of its products. The lease was subject to cancellation upon a thirty day notice by either party and provided that upon cancellation the lessee should return the equipment in good condition. It was on a printed form intended to cover cases where the lessee was not the owner of the land, whereby the land owner assented to the installation and agreed that the Company could remove the equipment without legal proceedings. On February 19, 1948, F. N. Pecora executed a purchase agreement,

being a renewal of a former agreement, whereby he agreed to buy gasoline from the Texas Company.

The gasoline business was doing poorly in 1949 and early in 1950 the Pecoras decided to enlarge the store by erecting a 25 by 38 foot addition to be located partly on ground occupied by the filling station pumps and tanks. An application was made on January 20, 1950, for a building permit, which was issued on February 20, 1950. This matter had been talked over by Pecoras with the Texas Company and as a result the latter gave notice on January 26, 1950, to terminate the sales agreement on February 28, 1950.

On February 28, 1950, the Pecoras executed a contract with Wielgosz to construct the building at a cost of $12,300.00. The builder agreed to remove all waste material and debris from the lot during course of construction. No basement was included. Excavation for the foundation was to be deep enough to support a two story brick building, with a footing two feet wide, eight inches thick and foundation wall one foot thick. Work was to commence as soon as possible.

On February 23, 1950, the Texas Company issued an order to R. C. Martin, a contractor employed by it, to remove all equipment of the company from the Pecora lot. On February 28, 1950, John Morgan, maintenance man for the Texas Company, went to the Pecora property to supervise the removal. Morgan says he had a conversation with one of the Pecoras and was requested not to remove the tanks from the ground. This is denied by Pecoras. Martin then was directed by Morgan to remove the pumps and leave the tanks. These two witnesses testified that they removed all gasoline from the tanks that could be taken out by pumps. Some residue however remained. These men then proceeded to cap the fill pipes and suction pipes at the top of the ground, but left the vent pipes in place.

It appears from testimony of Morgan and Martin that there are three ways in which such tanks are dealt with.

If they are to be abandoned in the ground, they are filled with sand and water and all pipes capped near the top of the ground. If they are to be left in the ground for future use, they are capped as described by Morgan during temporary non-use. If they are to be removed from the ground, all pipes are removed from the tanks and plugs inserted in the holes from which the pipes were taken.

It is clear the Texas Company intended only to make these tanks secure during temporary non-use. It knew of the building plans and that the tanks would have to be moved. Whether it intended later to return and move them is not clear. If it intended to abandon them as old and worthless, then it did not follow the approved method.

Wielgosz coming upon the premises about March 4, 1950, to start the building found the tanks in the ground. He testified he knew nothing of the dangerous character of such tanks. It was not a part of his contract to remove them; he was told by Pecora to take them out. Pecora says he told Mr. Strippy of the Texas Company of his intention to erect the building and Strippy replied: "All right, we are going to remove the pumps and the big sign but we won't remove the tanks. * * * The tanks are old and they are of no value to us. It will cost us more to take them out than what they are worth, and we can get all the new tanks we want, and we will not use these old tanks."

Wielgosz dug up the three tanks, put chains around them and dragged them across the street to the vacant lot of the Pecoras. He was directed to do so by Pecora. Both Wielgosz and Pecora thought the tanks were empty. Neither knew they were dangerous. Later Wielgosz with Pecora's permission hauled one of them away to a farm of a relative. Neither seems to know whether the pipes on the tanks were capped after removal.

The vacant lot of Pecoras on which the two tanks were left was known by Pecora to be a place where children frequently played. His own children played there.

He warned some children to stay off the tanks. He feared they might be rolled over and injure a child.

On this same lot, about twenty feet from the tanks, was a trash can in which Pecora's clerks were accustomed to burn rubbish. Twenty-three feet from the tank involved here, and about the same distance from the trash can, was a tree. The tree stood slightly outside the lot line and upon the public highway.

About four o'clock on the afternoon of March 17, 1950, four boys, Grace, Brown, Norton and McGee were playing on the lot rocking the tanks back and forth. It is not clear whether a fire left by Pecora's clerk was smouldering in the trash can or whether a fifth boy had lighted it and left. Norton, aged thirteen, says he saw gasoline run out of a tank when they rolled it over and some of it was on the ground. He took a lighted stick from the trash can, went over to the puddle of gasoline and held the burning stick toward it. At that time Grace and Brown were standing at the tree. McGee was running away. There was a terrific explosion. Both ends of the tank were blown out. Miraculously Norton was only slightly burned. Grace and Brown were burned, the former severely.

There was sufficient evidence from which the jury could have found certain facts important in the decision of this case. Some of them are not disputed. It is not disputed that the tank was from beginning to end the property of the Texas Company. It was conceded at the argument that Morgan understood that the tanks were not to be left permanently in the ground. It is clear from the testimony of Morgan and Martin that the safe procedure in removing a tank from the ground is to disconnect all pipes and securely plug and seal all openings at the tank. It is clear from their testimony that an old tank cannot be completely freed of gasoline, sluge and vapors except by the use of steam or chemicals. The vapors linger in scales of rust and even in the pores of the steel. From long experience and technical knowledge the em-

ployees of the Texas Company knew the dangerous nature of tanks. All this is practically conceded. Nor is there any evidence that the Texas Company gave warning to anyone.

The jury could have found from the evidence that Pecora, Wielgosz and the infant plaintiffs had no special knowledge of the lingering characteristics of gasoline or of the highly dangerous nature of an apparently empty tank. Under similar circumstances it was held in *American Oil Co. v. Wells*, 164 Md. 422, 165 A. 298, that a person with no special knowledge or prior warning was not guilty of contributory negligence as a matter of law when he used burning paper to thaw a water pipe near the open suction pipe of an underground tank.

The negligence of the Texas Company in the first instance is its leaving the tanks in the ground unfilled with sand and water, if it intended to abandon them; or failing to cap them at the tank if it knew, as is conceded, that they would have to be moved. Further, with a knowledge that someone might move them, with a knowledge that some disposition would have to be made of them, once they were out of the ground, and with a special knowledge of their dangerous character, it failed to warn anyone of the risks involved.

The next question is whether this original negligence makes the Texas Company liable for the event which followed. It appears that the Company had no knowledge that the tanks had been removed or where, or knew anything of the matter until an account of the explosion appeared in the newspapers.

The appellant in its brief fails to take into account the element of hidden danger. Therefore such cases as *State v. Hecht Co.*, 165 Md. 415, 169 A. 311, (elevator shaft) ; *Birckhead v. Baltimore*, 174 Md. 32, 197 A. 615, (stones near highway) ; *Bloom v. Good Humor Ice Cream Co.*, 179 Md. 384, 18 A. 2d 592, (automobile) ; *Otis Elevator Co. v. Embert*, 198 Md. 585, 84 A. 2d 876, (elevator) ; *Wash. Sub. San. Comm. v. Musgrove*, 203 Md.

231, 100 A. 2d 27, (water meter cover) ; *Walker v. Vail*, 203 Md. 321, 101 A. 2d 201, (garage door) ; and similar cases, do not apply.

The jury could have found from the evidence that these tanks were known to the Texas Company to be highly dangerous if brought in contact with sparks or fire. It could have found that there were safety measures well known to the Texas Company whereby the tanks could be rendered harmless. It could have found that the Texas Company knew that the tanks must be moved and that it took no action to render them safe for removal. The jury could have found that the Texas Company should have foreseen that others ignorant of the danger might remove them and leave them in an unsafe condition. The jury could have found from the evidence that the Texas Company should have foreseen that these tanks thus exposed and dangerous would constitute a hazard to others and that the explosion which occurred in this case was a reasonably foreseeable result. Such finding by the jury would establish the negligence of the Texas Company.

The next inquiry is whether any acts of Pecoras, Wielgosz, Norton or the plaintiffs constituted an intervening cause so as to break the chain of causation and relieve the appellant of liability.

The appellant cites the case of *Perry v. Rochester Lime Co.*, 219 N. Y. 60, 113 N. E. 529. In this case the defendant stored a box of explosive caps on a strip of land between its warehouse and the Erie Canal. The caps were packed in tin boxes, thirty-three tin boxes were packed in wooden boxes and the wooden boxes in a chest. Boys of twelve and thirteen stole a wooden box and carried it a half-mile away. Next day they carried it from a place of hiding, the Perry boy, aged eight, followed them, there was an explosion and the three boys were killed. The court held there was no liability because there were new and intervening causes which the defendant could not reasonably foresee. This case was

distinguished by the same court thirty years later in the case of *Kingsland v. Erie Co. Agricultural Soc.,* 298 N. Y. 409, 84 N. E. 2d 38. In that case a fireworks company was conducting a display at a fair. Three bombs had failed to go off and were placed in an open box. Three boys of twelve and thirteen carried them home. Next day a seven year old brother got one of them, it exploded and he was injured. The court held that the taking away of the bombs was readily foreseeable and the defendant's negligence was the proximate cause of the injury.

These cases will illustrate the difference, (and dispose of the appellant's argument), between the tank in this case and the thousands of automobile tanks on the streets every day. These tanks are covered, concealed and inaccessible. The fill pipes are capped and usually concealed. The tank in this case was perhaps thirty times larger, likely to be removed, uncapped, and thus capable of being rolled around, spilling out gasoline and emitting dangerous fumes. It is like the discarded bombs and not like the explosives concealed in three boxes.

Proximate cause has been so often defined by this Court as not to make it necessary to resort to the decisions of other States. In *Pennsylvania Steel Co. v. Wilkinson,* 107 Md. 574, 582, 69 A. 412, Judge Burke said: "The question of remote and proximate cause is often perplexing and embarrassing, and at times very difficult to determine. Cases may illustrate the question; but the Courts have never laid down any hard and fast rule upon the subject. It is to be decided upon common sense principles in the light of the surrounding facts and circumstances. 'The true rule is, that what is proximate cause of an injury is ordinarily a question for the jury. It is not a question of science, or legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. The primary cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied at the other end, that force being the proxi-

mate cause of the movement, or as in the oft cited case of the squib thrown in the market place.' *The Milwaukee & St. Paul Ry. Co. v. Kellog,* 94 U. S. 469."

In the *Wilkinson* case above the defendant was constructing a bridge over a highway. It allowed a rope to hang loosely from above. An unknown person dangled the rope about and struck the horse of the plaintiff who was driving through. The horse ran away and injured the plaintiff. It was held that the negligence of the defendant in allowing the rope to hang over the street was the proximate cause of the injury. *Baltimore v. Terio,* 147 Md. 330, 128 A. 353; *Lashley v. Dawson,* 162 Md. 549, 160 A. 738; *Sun Cab Co. v. Reustle,* 172 Md. 494, 192 A. 292; *Armiger v. Baltimore Transit Co.,* 173 Md. 416, 196 A. 111; *Industrial Service Co. v. State,* 176 Md. 625, 6 A. 2d 372.

Proximate cause being a question for the jury, it was warranted in this case in finding that although the Texas Company capped the pipes leading to the tanks, it knew the tanks must be moved; it knew a suction pipe about five feet long was attached to the tank and ran into a concrete island; that a vent pipe attached to the tank extended fifteen feet up the side of a building and a fill pipe two feet long was attached to the tank. The jury could have found that the Texas Company knew or should have known that these pipes would be cut off or disconnected in removal of the tank from the ground. The jury could have found that the tank once removed, with open pipes attached, was known by the Texas Company to be a dangerous instrumentality, capable of doing great harm; and that the removal to a vacant lot, the rolling about by the children, the application of the fire and the explosion and injury were all links in a chain of foreseeable circumstances. The facts of the case are such that the Court cannot say as a matter of law that the original negligence of the Texas Company was not the proximate cause of the injury. The jury by its verdict has found that in fact it was.

Next to be decided is whether the lower court was right in instructing the jury it could find a verdict against the Texas Company and in favor of Pecoras and Wielgosz. It should be noted first that although the Texas Company well knew of the dangers involved, it gave no warning to Pecoras. In turn they gave no warning to Wielgosz. There is evidence that these defendants were ignorant of the hazardous nature of an apparently harmless object. If the jury believed from the evidence that Wielgosz and Pecoras thought that the tanks had been drained by the Texas Company and further found that these defendants did not know that an apparently empty tank could, and probably would, contain explosive vapors, then the jury was warranted in finding as a fact that there was no negligence on the part of these defendants. *American Oil Co. v. Wells, supra.*

Knowledge of the danger involved is a necessary element of negligence. *Adams v. Carey,* 172 Md. 173, 186, 190 A. 815; 38 *Am. Jr.* 665. Unless a defendant has actual knowledge or is reasonably chargeable with knowledge that his act or omission may injure another, he is not guilty of negligence. All of the circumstances under which he acts or omits to act must be considered and measured by the standard of the reasonably prudent man. The general rule is that the question of negligence must be left to the jury. *Geiselman v. Schmidt,* 106 Md. 580, 68 A. 202; *Riley v. State,* 140 Md. 137, 117 A. 237; *State v. Carroll-Howard,* 183 Md. 293, 37 A. 2d 330; *Eisenhower v. Baltimore Transit Co.,* 190 Md. 528, 59 A. 2d 213. The conclusion is that the court committed no error in instructing the jury that it could find a verdict for the plaintiffs against one of the defendants and for the other two defendants.

The charge of the trial judge to the jury was partly oral and partly included the reading of instructions requested by the parties, as modified by the court. It is contained in forty-five numbered paragraphs and sixteen pages of the printed record. The first nine para-

graphs recite the facts as claimed by the several parties, point out the conflicts and instruct the jury of its duty to decide such conflicts. The next eight paragraphs define negligence, contributory negligence, the care required of children of tender years, and explain the burden of proof. No exceptions were taken by the appellant to this portion of the charge.

By the 18th paragraph of the charge the court instructed the jury that if it found from the evidence that the infant plaintiffs were on the land of the Pecoras at the time of the explosion, then the verdict must be for the defendants. By the 19th paragraph the court charged that if the jury found that the infant plaintiffs were on the public highway, and that the explosion was proximately caused by the negligence of the Texas Company, Pecoras and Wielgosz, and that the plaintiffs were not contributorially negligent, then the verdict must be for the plaintiffs against all defendants. The instructions were at least as favorable to the appellant, the Texas Company, as it was entitled to. *State v. Fidelity Warehouse Co.*, 176 Md. 341, 4 A. 2d 739; *Carroll v. Spencer*, 204 Md. 387, 104 A. 2d 628. Taken together these instructions left the jury to find whether or not the plaintiffs were on the public highway. By its verdict the jury must have found they were on the highway. The appellant objects to these parts of the charge. It argues that the court should have charged that the children could have been found to be licensees as to Pecoras' lot and still be trespassers on the Texas Company's tanks. But the charge expressly stated that *neither a licensee nor a trespasser* could recover. Thus the appellant had the benefit of this charge.

The same instructions are objected to on the ground that although the jury might have found the plaintiffs were on the highway, they might also have found that all of the four boys were engaged in a common design to set fire to the gasoline, that Norton was carrying out a part of the plan, while these plaintiffs ran to a place of

safety. It is argued that this would constitute a continuing trespass, and the plaintiffs would still be trespassers although they reached the highway. The weakness of this argument is that there is no evidence in the case, either direct or by inference, of any common design or plan of the boys to set the fire. In the absence of such evidence the court was right in excluding this hypothesis from the charge.

A point was made that the court set up a different test as to the Texas Company and Wielgosz in defining what Norton must comprehend to make his act an intervening cause. In paragraph 29 (Wielgosz) the court said if the jury found that Norton "deliberately placed the lighted flame at the end of the stick at or near the large fill line attached to the tank where some gasoline was lying on the ground, knowing and intending that the gasoline should burn" and as a result there was an explosion, then this was an intervening cause and the verdict should be for Wielgosz. In paragraph 26 the court used this language "deliberately brought said stick to the tank for the purpose of igniting the gasoline and causing an explosion." It is argued that as to the Texas Company the court required the jury to find a specific intent of Norton to cause the explosion before his act would be an intervening cause; whereas as to Wielgosz his intent merely to set fire to the puddle of gasoline would be an intervening cause.

One answer to this contention is that the instruction in paragraph 26 is in the precise language of the appellant's request. Assuming without deciding that the instruction in 26 is correct, it is difficult to find any real difference in the language used in 29; "placed the lighted flame at the end of the stick at or near the large fill line attached to the tank where some gasoline was lying" is the same description of the act of the boy.

It is argued that the charge placed the burden of proof on the Texas Company to show that there were intervening acts to break the chain of causation. The

appellant points to paragraphs 26 and 27 as erroneous in this respect. Those paragraphs do not say who must prove the existence or non-existence of such intervening acts. But paragraph 12 clearly places the burden of proof on the plaintiffs to establish by a preponderance of the evidence that the defendants were guilty of negligence which was the proximate cause of the injury.

The charge in this case was long and, because partly oral and partly from written requests, contains some repetition. It must be considered as a whole. *Larkin v. Smith*, 183 Md. 274, 37 A. 2d 340; *Fisher v. Baltimore Transit Co.*, 184 Md. 399, 41 A. 2d 297; *Reindollar v. Kaiser*, 195 Md. 314, 73 A. 2d 493; *Bull Steamship Lines v. Fisher*, 196 Md. 519, 77 A. 2d 142; *West v. Belle Isle Cab Co.*, 203 Md. 244, 100 A. 2d 17. As there is no reversible error, the judgments will be affirmed.

*Judgments affirmed, with costs.*