# SUSQUEHANNA TRANSMISSION COMPANY OF MARYLAND

*vs.*

# THOMAS F. MURPHY AND CORNELIUS F. MURPHY.

*Appeals: province of court; questions of fact. Burning brush: responsibility for——. Counsel: duty at trial; comments on evidence; discretion of trial court. Experts: who are.*

It is not the province of the Court of Appeals to decide any question of fact, on appeal from the decision of a court of law.
p. 344

A man may lawfully burn rubbish or brush on his own land, if he exercises that prudence in the starting of the fire and the management after he has started it which the rules of ordinary care demand.
p. 348

But where there is much inflammable materials on the ground and the wind is strong in the direction of his neighbor's land, he may well be charged with negligence if he starts a fire, or, having started one, does not exercise that care to keep it under control which ordinary prudence dictates.
p. 348

Where a fire has not been directly communicated to the plaintiff's property by sparks or other burning matter from an engine, but has been communicated across other property, the question to be submitted to the jury, to determine from all the facts of the case, is whether the injury complained of was the natural consequence of the defendant's negligence, or whether it was occasioned by some intervening cause.
p. 349

It is the duty of counsel in the trial of a cause to confine himself in argument to the evidence, and he should not be permitted by the court, over proper objection, to state and comment upon facts not in evidence, or to state what he could have

proved; persistence in this course of conduct may justify a new trial.                                                    p. 349

The conduct of a trial rests largely in the discretion of the presiding judge, and the appellate court should in no case interfere with its judgment, unless such discretion has been abused to the prejudice of the party complaining.              p. 349

How much knowledge a witness must possess before being permitted to testify as an expert lies largely in the discretion of the trial court, and its decision thereon will not be disturbed unless clearly erroneous.                               p. 350

*Decided June 28th, 1917.*

Appeal from the Circuit Court for Baltimore County. (DUNCAN, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE.

*T. Scott Offutt, for* the appellant.

*Elmer J. Cook* and *Thomas H. Robinson,* for the appellees.

BURKE, J., delivered the opinion of the Court.

This is an appeal by the defendant below from a judgment of five hundred dollars entered against it in the Circuit Court for Baltimore County. The defendant is a corporation, and owns a right of way about 100 feet wide through Harford and Baltimore Counties to the City of Baltimore. Upon this right of way are erected towers to which wires and other mechanical devices are attached, and used for the transmission of electric power generated by a power plant located at McCall's Ferry in the State of Pennsylvania. The plaintiffs are the owners of land situated in Harford County at a distance of about 2,000 feet from the defendant's right of way. Upon this land was a tract of timber enclosed by a

fence. Between their property and the defendant's right of way, at the location spoken of in the testimony, there is located the land of Mrs. Streett and Albert Berry, which land adjoins the plaintiff's property. Then intervenes some land, which at the time of the injury complained of, was occupied by a man named Ayres. A part of this land—adjoining that of Streett and Berry, was planted in corn, and the balance, covered with grass and weeds, was contiguous to what is spoken of by the witnesses as Campbell's and Slade's woods. These woods lay along and near the defendant's right of way. In Slade's woods there was a pile of rails between three and four hundred in number and some posts which belonged to a man named Harmon. The evidence shows that Slade's woods was very much elevated above the plaintiff's land.

The declaration alleged "that on or about the 2nd day of May, in the year 1914, the servants, agents and employees of the defendant negligently set fire to dried grass and weeds and bushes that were negligently suffered by the defendant to be and remain on its said right of way, for the purpose of burning the same, at a time when a high wind was blowing, and that the fire so negligently started on said right of way was thence communicated to the plaintiffs' timber and fencing whereby and in consequence thereof a large part of said timber was burnt and injured." The defendant pleaded the general issue pleas, and the case was tried before the Court and a jury upon the issues joined upon these pleas. During the progress of the trial the defendant reserved 23 exceptions. Nineteen of these were taken to the rulings of the Court upon questions of evidence, one to the rulings on the prayers, and three to certain statements made by the counsel for the plaintiffs in their arguments before the jury. A motion for a new trial was made by the defendant which the Court denied, and whilst the counsel for the defendant complains that the verdict was grossly excessive, he concedes that this Court has no power to grant him relief on that

ground.  Our power is limited to an examination of the record and a decision upon the question as to whether the Court below committed any injurious error of law in any of its rulings.  Before considering the exceptions, it may be well to state some matters about which there does not appear to be any dispute.  It is shown that the plaintiffs were the owners of the property mentioned in the declaration, and that on May 2nd, 1914, a fire broke out in the plaintiffs' woods, burned over about five acres of their land, injured the timber thereon, and destroyed a large portion of the fencing which enclosed the tract.  It is also shown that about noon on that day James C. Parker, the line superintendent of the defendant, directed Caesar Hawkins and Walter Winder, two men in the employ of the defendant and over whom Parker had authority, to gather into piles and burn certain debris which was laying upon the right of way of the defendant and near to Campbell's and Slade's woods.  These men gathered up the debris into piles, about three feet high and five feet wide and about five feet apart, along the right of way and set them on fire.  The fire from these burning piles was communicated first to Campbell's and then to Slade's woods, and it destroyed the rails of Harmon, to which we have referred, and for which loss the defendant compensated him.

The disputed questions of fact were:  *First,* as to the character of the timber on the plaintiffs' land, the extent of the injury to the timber, and its value before and after the fire; and *secondly,* the extent of the fire in Slade's woods, the direction and velocity of the wind at the time of the fire; and *thirdly,* a question of law, raised by the defendant's first, second and third prayers, which sought to withdraw the case from the jury, as to whether there was any testimony offered legally sufficient to show any negligence on the part of the defendant, or any legal connection between the fire started on the defendant's right of way and the injury suffered by the plaintiffs.  As negligence is the basis of the action, it was essential for the plaintiffs to offer evidence legally sufficient

to show the negligence alleged and that the injuries sued for bore the relation of cause and effect. The concurrence of both and the *nexus* between them must be shown to exist to constitute a right to recover. *Benedick* v. *Potts,* 88 Md. 55.

It is not the province of this Court to decide any such question of fact. That was the exclusive province of the jury. Eight witnesses were called on behalf of the plaintiffs, viz: W. Elijah Somerville, a surveyor, Thomas F. Murphy, James G. Parker, Cornelius F. Murphy, Albert Berry, Albert Berry, Jr., Edward L. Oldfield and Benjamin Garber.

A brief synopsis of the material portions of the evidence of these witnesses bearing upon the questions presented by this appeal is here givin:

Mr. Somerville made a plat of the location of the transmission line with reference to the property of the plaintiffs and made measurements of the distance from the transmission line to the Murphy property and of the tract burned. He said the fire extended over a little more than five and a half acres of the timber land, and that the distance from Slade's woods to the Berry and Streett land, which as we have said adjoined the Murphy land, was 1,968 feet, and that the distance from the Slade land where this line of 1968 feet was measured to the defendant's right of way was probably about 125 feet. He testified that the land slopes towards the Streett property, and that at about the center of the Slade land the elevation is from 50 to 75 feet above the Streett tract.

Thomas F. Murphy testified that he first noticed the fire about two o'clock P. M.; that it was "a terrible windy day"; "the wind sounded like a train of cars, it was blowing from the west"; that the fire burned more than five acres of his woodland; that he saw the smoke coming from the Slade woods,—coming from the west, direct to his property; that the fence on the Berry and Streett lines was entirely destroyed; that the timber on his tract was principally oak, white oak, and the very best of chestnut; thickly wooded, a splendid piece of timber; that the fire continued in his woods until six o'clock, and killed the timber and the young growth;

that the timber was large and marketable. He testified that he owned about four hundred acres of land in that neighborhood, and had been engaged in farming for a number of years, and that he had had experience in buying and selling timber, and timber land for over two years; "in Harford County we bought 200 acres in the northern part of the county near what is known as Carea and we bought 35 acres near the Rocks recently and we have been buying telegraph poles in all the northern part of the country. He had been in the timber business a little over three years. Prior to that he had bought several pieces of land for himself with timber on it. That he made his own estimate of the lumber on a tract. They bought the timber for marketing it, cutting it into different things, railroad cross-ties, crossing planks, telegraph poles, bridge timber, wagon wood, whatever we can market it in best. They furnish the county with considerable bridge timber; in making the purchases of timber they bought just the timber, the wood leave we call it. He inspected it before he bought it." He further said he knew of sales of woodland in that vicinity; that he knew of sales there; that he had bought the timber on the Wright property, which was about eight miles from his own; that he was familiar with the prices of timber, and that he had been engaged in the timber business for the last two or three years; that the day of the fire was a windy day and very dry, and had been dry for several days.

James G. Parker, the line superintendent was called by the plaintiffs and testified that he ordered the men, Hawkins and Winder to burn the debris, but was not present when the fire started in the Campbell and Slade woods; that he gave the order about 11 or 11:30 A. M. and that at that time he said the wind was blowing from the northeast.

Cornelius F. Murphy testified that he recalled the fire which occurred on May 2, 1914; he first noticed it about 1:30 or 2 o'clock. That it was a clear day, but very windy; the wind was blowing at a high gale; it was blowing a gale from Slade's woods to the plaintiffs' woods; he could see the

smoke. The Slade land was higher than his own. His evidence as to the kind and character, quantity and marketability of the timber on the tract burned was corroborative of Thomas F. Murphy. He said he had been engaged in the timber business; that he bought tracts, cut off the timber, operated a sawmill, and sold the lumber; that he had bought timber rights in the upper section of Harford County, and that the effect of the fire on the timber in question was to destroy it; that it killed the trees.

Albert Berry said, he was at his home when he first saw the fire between 1 and 2 o'clock; that it was a very windy day; that he saw an "awful smoke" in the corner of the Slade property; that the wind was blowing directly from Slade's woods and that there was a fire in that woods; that the fire was burning on the Streett property, which was much lower than the Slade woods, and spread to the Murphy tract; that it burned fencing on his and the Murphy tract and spread into the Murphy land.

Albert Berry, Jr., said he saw the fire in Slade's woods between 12:30 and 1 o'clock, and testified that, "that is the woods up by the Susquehanna Transmission line. He saw the fire burning there, saw the blaze. He supposed he was about a couple of hundred feet from his father's house. There was then a very high gale of northwestern wind blowing. It was a clear day. The wind was blowing from the west. He saw a fire when it went in Mr. Streett's woods. He did not suppose it was any more than a half hour, after he saw the fire in Slade's woods, that he saw fire in Streett's woods. He was eating his dinner. When he saw it in Mr. Slade's woods, he went in to eat his dinner. When he saw it in Mr. Streett's woods his father called his attention and he went to help put it out. When he got down there the fire was burning in Mr. Streett's woods, he stayed there until it was completed about 6 o'clock. The fire got over to his father's land sometime later after they tried to put it out in Mr. Murphy's tract. When he went down on Mr. Streett's prop-

erty the wind was blowing again westward. The Streett
property and his property and the Murphy property is con-
siderable sight lower than Slade's."

Mr. Oldfield saw the timber before and in February after
the fire. The general effect of his evidence was that before
the fire it was a fine piece of timber, and that it had been
seriously injured by the fire.

Benjamin Garber testified that he saw the fire between
1 and 2 o'clock; that there was a "terrible smoke" coming
down the hollow, and that he went over to Murphy's and
found the whole woods on fire. That the smoke was coming
down over Slade's woods towards Murphy's woods; it was a
dry day and the wind was blowing very hard, and he never
saw it blow much harder than it did that day; that it was
blowing direct from the west, and it was blowing smoke over
Mr. Ayres' field down over the Murphy woods.

Testimony on the part of the defendant was offered tend-
ing to show that the plaintiffs' injury was much less than
they testified to; that they had misstated the character and
value of the timber; that the fire could not have been caused
by any act of the defendant because the wind was moderate
and was not blowing in the direction of the Murphy tract;
and because there was no evidence of fire or burning of the
dried grass or weeds in that part of the intervening field,
above mentioned, which was in the possession of Ayres, who,
however, when called as a witness for the defendant testified
that the fire had burned the fencing between him and Albert
Berry. Berry's land was located beyond this intervening
field and adjoined the land of Murphy.

We now pass to the consideration of the legal questions
presented by the rulings on prayers. The only error which
it is claimed the Court made in this respect was in rejecting
the defendant's first, second and third prayers, which asserted
that there was no legally sufficient evidence offered to entitle
the plaintiffs to recover, and in overruling the special excep-
tion filed to the plaintiffs' first prayer, which declared that

there was no legally sufficient evidence in the case to support
the following hypothesis of the prayer, to wit: "That the fire
started by the defendant on its right of way was commu-
nicated from the woodland of one Slade referred to in said
prayer, to the woodland of one Streett, referred to in said
prayer."

By these prayers and under the special exception the
Court was asked to declare, as a matter of law, *first,* That
the defendant was not guilty of negligence in starting the
fires on its right of way under the circumstances stated in the
evidence, and, *secondly,* that said fires were not the proximate
cause of the injury sued for.   Both of these questions are
ordinarily questions to be passed on by the jury under the
facts and circumstances of the particular case, and, assum-
ing, as we must, the plaintiffs' evidence as to the weather
conditions and especially as to the velocity of the wind to
be true, there can be no doubt of the defendant's negligence.
Duties and responsibilities arise out of existing facts and
conditions and no reasonably prudent and cautious man would
have fired the piles of debris under the conditions described
by the evidence offered on behalf of the plaintiffs.   The true
rule of liability is stated in *Miller* v. *Neale,* 137 Wis. 426,
S. C. 119 N. W. 94, as follows: "A man may lawfully burn
rubbish or brush upon his own land, if he exercises that
prudence in the starting of the fire and the management
of it after it is started which the rules of ordinary care
demand.  He is using a dangerous agent, and when there is
much inflammable material on the ground, and the wind is
strong in the direction of his neighbor's land, he may be well
charged with negligence if he sets a fire or if having set it,
he does not exercise that care to keep it under control which
ordinary prudence dictates."   This rule is in accord with
practically the unanimous decisions upon the subject, among
which are *Black* v. *Christ Church Finance Co.,* 10 N. Z. L.
R. (1894), 238; *McVay* v. *Central California Invest. Co.,*

6 Cal. App. 184, S. C. 91 Pac. 745; *Richard* v. *Schleusener,* 41 Minn. 49.

The question whether the injury suffered by the plaintiffs was the natural and proximate cause of the fires set by the defendant was properly submitted to the jury. The general principles upon this subject were stated in *State use of Scott* v. *W. B. & A. Electric R. R. Co.,* 130 Md. 603, and need not be here restated. In the recent case of the *Western Md. R. R. Co.* v. *Jacques,* 129 Md. 400, we said: "The rule long in force, is, that where fire has not been directly communicated to the plaintiff's property by sparks, or other burning matter from the engine, but has been communicated across other property, the question to be submitted to the jury, to determine from all the facts, is whether the injury complained of is the natural consequence of the defendant's negligence, or whether it has been caused by some intervening cause. The record shows that this question was properly submitted. *A. & E. R. R. Co.* v. *Gantt,* 39 Md. 115; *P. W. & B. R. R.* v. *Constable,* 39 Md. 149; *Green Ridge R. R. Co.* v. *Brinkman,* 64 Md. 52; *Carter* v. *Md. & Pa. R. R.,* 112 Md. 599."

As to the 21st, 22nd and 23rd bills of exceptions, which were taken to the statements made by the counsel in argument, we find nothing sufficient to cause a reversal after a careful examination of the record, and of the principles by which the courts are guided in passing upon such objections. We said in *Esterline* v. *State,* 105 Md. 629: "It is the duty of counsel to confine himself in argument to the facts in evidence, and he should not be permitted by the Court, over proper objection, to state and comment upon facts not in evidence, or to state what he could have proven. Persistence in this course of conduct may furnish good grounds for a new trial. The conduct of the trial must of necessity rest largely in the control and discretion of the presiding Judge, and the appellate Court should in no case interfere with the judgment, unless there be an *abuse of discretion* by the trial Judge of a character likely to have injured the complaining party. * * * The observations of MR. JUSTICE BROWN upon

this subject in *Dunlop* v. *The United States,* 165 U. S. 486, may well be applied to the facts embraced in this exception: 'There is no doubt that in the heat of argument, counsel do occasionally make remarks that are not justified by the testimony and which are, or may be prejudicial to the accused. In such cases, however, if the Court interfere, and counsel promptly withdraw the remark, the error will generally be deemed to be cured. If every remark made by counsel outside of the testimony were ground for a reversal, comparatively few verdicts would stand, since in the ardor of advocacy, and in the excitement of trial, even the most experienced counsel are occasionally carried away by this temptation.' "

There remains for consideration the 19 bills of exceptions taken to rulings on evidence. The only really important ones are the second, third, eighth, ninth and tenth, which relate to the qualifications of Thomas F. Murphy and Cornelius F. Murphy, to speak as to the value of the timber before and after the fire with a view of establishing the damages. *Balto. Belt R. R. Co.* v. *Sattler,* 100 Md. 333; *Western Md. R. R. Co.* v. *Jacques, supra.* In *Chateaugay Ore & Iron Co.* v. *Blake,* 144 U. S. 476, the Court said that how much knowledge a witness must possess before he can be allowed to give his opinion as an expert must in the nature of things be left largely to the trial Court, and its rulings will not be disturbed unless clearly erroneous. We think these witnesses were qualified to speak upon the subject of value.

There was technical error in some of the rulings embraced in some of the other exceptions, but some of the evidence admitted was of no importance, and as to the other rulings the record shows that substantially the same evidence was admitted without objection either before or after the rulings. There must be a concurrence of error and injury, and after a careful examination of the whole record we find no error which would justify us in reversing the judgment.

*Judgment affirmed, with costs.*