587 A.2d 1146

**George P. MAHONEY, Jr., et ux.**

v.

**DEVONSHIRE, INC., et al.**

**No. 816, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

April 2, 1991.

---

Francis B. Burch, Jr. (C. Lamar Garren, Anthony L. Meagher and Piper & Marbury, on the brief), Baltimore, for appellants.

Thomas J. Gisriel (Michael Gisriel and Gisriel & Gisriel, on the brief), Baltimore, for appellees.

Argued before ALPERT, CATHELL and DAVIS, JJ.

DAVIS, Judge.

Six corporations—Country Ridge Inc., Coventryshire, Inc., Crossfox, Inc., Devonshire, Inc., Dover Foxcroft, Inc., and Dublin Field, Inc.—sued George P. Mahoney, Jr. and his wife, Amanda S. Mahoney, for a declaration of their right to use a right-of-way, an injunction barring the Mahoneys from interfering with their use of the right-of-way, and a declaration of their rights to repair and pave the right-of-way, as well as for tort damages. The Mahoneys filed a counter-claim seeking a declaration of the parties' rights regarding the right-of-way and an injunction against the use of the right-of-way inconsistent with the rights as determined by the court. From a decision of the judge that an easement of record existed and a determination by the judge of the scope of a prescriptive easement found by the jury, Mahoney and his wife appeal.

## FACTS

This appeal concerns the use of a roadway running over and through various properties located in Baltimore County, near Reisterstown, Maryland. The roadway, which essentially runs in an east to west direction, connects two roads located in the County, Longnecker Road and Hanover Pike. Longnecker Road and Hanover Pike both run, for our purposes, in a north to south direction. The properties concerned in this litigation lie between but do not reach either Longnecker Road or Hanover Pike.

George and Amanda Mahoney (the Mahoneys), appellants, own property which is situated between Longnecker Road and Hanover Pike. In particular, this property is located east of and adjacent to property owned by six corporations doing business as the Security Development Company (the corporations), appellees. The appellees, in an effort to develop and market six parcels of land located to the northwest of the Mahoney property, used the roadway running over appellants' property as ingress and egress to and from Longnecker Road.

Believing that appellees had no right to use the roadway traversing their property, appellants erected gates to foreclose access to appellees' property. Appellants also allegedly communicated with prospective purchasers of appellees' property to discourage its sale, and otherwise acted to prevent the development and sale of the property.

As a result of this activity, appellees filed suit in the Circuit Court for Baltimore County. Appellees sought a declaratory judgment establishing their right by way of easement to use the roadway and an injunction barring appellants from interfering with use of the roadway. Appellees also alleged damages for injurious falsehood and civil conspiracy.

At trial and by agreement of the parties that the existence of an easement of record was a question of law for the court, the circuit court (Brennan, J.) found that a record easement existed over appellants' property. The question of the existence of a prescriptive easement was submitted to the jury. The jury found that an easement by prescription was established over appellants' property.

After argument at trial by appellants that the scope of the prescriptive easement should have been defined by the jury which found the existence of the easement, the judge, in a final judgment and order dated March 1, 1990, found that appellees had the right to maintain and repair a right-of-way sixteen feet wide, including the right to pave the roadway. The judge also enjoined appellants from erecting gates on the road and from otherwise interfering with appellees' use of the roadway.

On appeal, appellants raise four issues:[1]

1. Whether, in the absence of any deed or other conveyancing document in evidence, the trial court can properly find the existence of an easement of record;

---

1. Issues one and two involve evidentiary rulings excluding the pertinent land records establishing a chain of title in support of a finding of a record easement and admitting the testimony of John Dowling, a title attorney, produced to relate the contents of excluded conveyanc-

2. Whether expert testimony concerning the contents of deeds and conveyancing documents, and legal conclusions about the effect of those contents, is inadmissible;

3. Whether the trial court's definition of the prescriptive easement is contrary to the weight of the evidence and;

4. Whether the trial court erred in failing to submit factual issues about the scope of the prescriptive easement to the jury.

Because we hold, addressing the third and fourth issues, that the lower court did not err in defining the scope of the prescriptive easement and in not submitting factual issues to the jury regarding this scope, we need not address the other issues raised by appellant.

## I.

### SCOPE OF THE PRESCRIPTIVE EASEMENT

Appellants aver that the trial court's determination of the scope of the prescriptive easement found by the jury was unsupported by the evidence. We cannot agree.

In Maryland, to establish an easement by prescription, it is necessary to prove an adverse, exclusive and uninterrupted use of a way for 20 years. *Kiler v. Beam,* 74 Md.App. 636, 639, 539 A.2d 1138 (1988) citing *Furman E. Hendrix, Inc. v. Hanna,* 250 Md. 443, 445, 243 A.2d 600 (1968); *Shuggars v. Brake,* 248 Md. 38, 234 A.2d 752 (1967). It has been established that "[w]hen an easement has been acquired by prescription, the character and extent of the use permissible are commensurate with and determined by the character and extent of the use during the prescriptive period." *Bishields v. Campbell,* 200 Md. 622, 625, 91 A.2d 922 (1952); *Barry v. Edlavitch,* 84 Md. 95, 112, 35 A. 170 (1896); *Kiler, supra,* 74 Md.App. at 640, 539 A.2d 1138; *L.*

---

ing documents. These documents were excluded by the trial judge as a sanction for failure to comply with pretrial discovery.

*Jones Easements* § 415; *5 Restatement, Property,* §§ 477, 478.

In *Tong v. Feldman,* 152 Md. 398, 403, 136 A. 822 (1927), the Court of Appeals observed that:

> There have been many decisions upon changes made or attempted by owners of easements in the enjoyment of them, and as with discussions on other questions in the law of easements, the theories and principles stated have not been uniform. Of course, a restriction in a grant or an express reservation must be given effect to its full extent, properly construed. *But there is nothing in the nature of a right reserved or an easement, apart from an express prohibition, which prevents all change during the course of its enjoyment.* (Emphasis added).

Although Maryland courts have had occasion to decide issues of the enlarged or expanded permissive uses of easements, no case has directly addressed this issue where an easement created by prescription is concerned. This case presents such an opportunity. In the case before us, we are called upon to determine whether the trial court clearly erred in expanding the scope of a prescriptive easement. Md.Rule 8–131(c). In our discussion, we shall be guided by other jurisdictions which have addressed this issue.

In *Kuras v. Kope,* 205 Conn. 332, 533 A.2d 1202 (1987), the Supreme Court of Connecticut had occasion to decide whether the lower court erred in permitting easement owners to broaden the scope of a prescriptive easement. In *Kuras,* the Kopes obtained by prescription a right-of-way in the form of a dirt road approximately 1900 feet long. The Kuras family brought an action against the Kopes in which they sought, *inter alia,* a declaratory judgment defining the width, scope and nature of improvements which could be made to the dirt road. They also sought injunctive relief restraining the expansion, improvement or broadening of the easement.

After conducting the trial and viewing the *locus in quo,* the trial court determined that the right of the Kopes to use the dirt road was established by prescription; that the use

was limited to the use that established it; that the right-of-way was only about ten feet wide, and that although the Kopes had a right to maintain the right-of-way as a dirt road, they could not add stone, gravel or sand to it. Nor could they grade the dirt or build "slopes" on the area along the right of way.

On appeal, the Kopes averred that the decision of the trial court "has taken away all rights incident and necessary to its [the easement's] enjoyment and has taken away its practical usefulness." *Id.* 533 A.2d at 1206. Further, the Kopes urged that the improvements were in keeping with the nature and use of the prescriptive right-of-way and were permissible so long as the improvements were made for purposes related only to ingress and egress to and from their residence. *Id.* Finally, the Kopes argued under 5 Restatement, Property, §§ 478–79 that new needs, as evidenced by the improvements they proposed, "must have been satisfied if the prescriptive easement is to be effective." *Id.*

Agreeing with the Kopes that the trial court erred in restricting the scope of the easement, the Supreme Court observed:

> Even though the common and ordinary use which establishes the prescriptive right also limits and qualifies it, as one court aptly observed, "the use made during the prescriptive period does not fix the scope of the easement *eternally.*" One commentator in this field states that "if the above announced rule were applied with absolute strictness, the right acquired would frequently be of no utility whatsoever. A right-of-way, for instance, would, as has been judicially remarked ... be available for use only by the people and the vehicles which have passed during the prescriptive period." But the rule is not applied with absolute strictness.

*Id.* at 1207. (Citations omitted, emphasis in original).

After further discussion of the law regarding the increased permissible use of prescriptive easements, the Court said:

*The desire and need for improvements in such a prescriptive easement for ingress and egress emerges from the evolution of the dominant parcel.* The nature and scope of such improvements, however, cannot be fully foretold. Acknowledging that the interests and rights of both the dominant and servient tenements often conflict, the problem arises of how present needs may be justified under a prescriptive right that apparently met the needs of another day. This brings into focus the proposition that the use and improvement of this prescriptive easement must not unreasonably burden the servient tenement that is already burdened with the easement.

*Id.* (Emphasis added). *See* 5 Restatement, Property § 480.

Bottomed on this enlightened approach, the Court found that the trial court erred in restricting use of and improvement to the right-of-way, and that, subject to further fact finding, the road could be graded and asphalt or gravel laid. The Court stated that: "It appears that one who has a prescriptive easement has the privilege to do such acts as are reasonably necessary to make effective enjoyment of the easement unless the burden on the servient tenement is thereby increased." *Id.* at 1208. (Citations omitted). *See also Big Cottonwood Tanner Ditch Co. v. Moyle,* 109 Utah 213, 174 P.2d 148 (1946); *Olcott v. Thompson,* 47 AR 184 (1927). Clearly, the court in *Kuras* did not believe that the proposed improvements would necessarily and impermissively burden the servient estate.

A similar result was reached in *Jordan v. Worthen,* 68 Cal.App.3d 310, 137 Cal.Rptr. 282 (1977). In *Jordan,* the owners of eight parcels of land created by a subdivision of a 320 acre ranch sued the owners of two of several parcels subject to a prescriptive easement in a private road leading to the ranch. In the suit, plaintiff owners sought, *inter alia,* an injunction against an obstruction (a locked chain) placed across the road. The trial court held that it was reasonably foreseeable that the ranch property would be subdivided and that the burden wrought on the owners of the servient estate by the increased use of the road was not

unreasonable. From a judgment for plaintiffs, the owners of the servient estate appealed.

The trial court in *Jordan* had made detailed findings regarding the road in question. The court found that from the early 1900's, the properties served by the road were large family farming units. The farmers were involved in the production of wood forest products, together with the growing of fruit trees, family gardens and the raising of sheep and cattle. The road was used in connection with these activities as ingress and egress to and from the ranch. The road was also used for access to one or more ranches beyond the subject ranch for the transport of considerable amounts of wood forest products.

Beginning in the 1940's, the area including the ranch followed a pattern of subdivision into smaller parcels and a change from the original family farms to use as second or retirement homes. This resulted in increased population and vehicular use of available roads, including the roadway at issue in the case. At the time of trial, the roads were used only for access to and from the properties owned as second or retirement homes.

In addition to finding that the evidence showed that the appellants knew of the changing nature in the use of the properties supported by the road, the California Supreme Court found that appellees' use of the private road for residential traffic was not unreasonable. The court said:

> Finally, we note that Civil Code Section 807 provides: "In case of partition of the dominant tenement the burden must be apportioned according to the division of the dominant tenement, but not in such a way as to increase the burden upon the servient tenement." Strict application of this rule would limit the right to use the private road to one family, presumably the plaintiffs Jordan, who have acquired the old ranch house. The law, however, is not so unmalleable. The Restatement of Property indicates, "Except as limited by the terms of its transfer, or by the manner or terms of the creation of the easement appurtenant, those who succeed to the possession of each

of the parts into which a dominant tenement may be subdivided thereby succeed to the privileges of use of the servient tenement authorized by the easement.

*Jordan,* 137 Cal.Rptr. at 292–93. Like the court in *Kuras,* the *Jordan* court found that the change in nature and scope of the use of the easement was permissible and did not unreasonably burden the servient estate.

Another case, *Hill v. Allan,* 259 Cal.App.2d 470, 66 Cal.Rptr. 676 (1968), is instructive. In *Hill,* "[t]he crux of the dispute was whether the use of the easement by 24 additional residences exceeds the general outline of the prescriptive right acquired by the adverse user over the years or whether it is merely a change in degree of established use." *Hill,* 66 Cal.Rptr. at 686–687. The Court was considering the question in the context of a change in the character of the use of the dominant tenement from a primarily agricultural to residential use. The easement in controversy was an irregularly curving road which had served the dominant tenement for approximately 70 years.

In finding that there was no substantial increase in the burdening of the servient estate or interference with the existing agricultural uses of that estate, the Court said:

> In view of the evolution of the dominant and servient tenements here from a primarily agricultural one in 1912 to a primarily residential one by 1958, we must apply the test of reasonable foreseeability.... As indicated by the Restatement [of Property § 478–79], no use can be exactly duplicated. *The inevitability of change dictated by natural forces and human activities requires that subsequent users under prescriptive easements must vary in some degree from the users by which the easements were created.* The real question is whether the Nielsons' present and contemplated use of the easement as an access road for 24 additional homes on their 120–acre parcel was a reasonable foreseeable development of the dominant tenement as it evolved during the various prescriptive periods and whether a substantial increase in the servient tenement would result.

*Id.* at 687. (Emphasis added). The Court decided that the development was foreseeable and that the increased use of the easement was not unreasonable as to the servient tenement.

In *Bodman v. Bodman,* 456 Pa. 412, 321 A.2d 910 (1974), appellees brought an action in equity to compel appellant to remove a chain barricade from a lane which crossed his property and provided access to appellees' land. In enjoining appellant from interfering with appellees' future reasonable use of the land, the Supreme Court of Pennsylvania stated:

> Because it is created by adverse use, an easement by prescription is limited by the use made during the prescriptive period. This limitation is not, however, absolute. Easements by prescription may be apportioned when the dominant tenement is subdivided. Restatement of Property § 488 (1944). *Furthermore, "normal evolution in the use of the dominant tenement" will permit reasonable increases in the burden imposed on the servient tenement.* Here, the use during the prescriptive period was for entry and exit by various motor vehicles. Since a portion of the dominant tenement was sold the use has continued to be for access by motor vehicles. Although the number of vehicles using the lane may have increased, we conclude that the chancellor correctly found that the increase is not unreasonable. Only four cabins have been built. Testimony indicates that these cabins are to be sold to private parties who will use them for recreational purposes. On this record we cannot say that it was error for the chancellor to find that the burden imposed on the easement is unreasonable.

*Id.* 321 A.2d at 912. (Citations omitted, emphasis added).

Where property owners had been enjoined from limiting the width of the right-of-way across their land, the Superior Court of Pennsylvania, in reversing the decision of the lower court, observed

> that normal evolution of the dominant tenement permits reasonable increases in the burden imposed upon the

servient tenement. The easement originally was used for entry and exit of motor vehicles so that an increase in the number of vehicles using the lane was not unreasonable. The *width* of the easement did not increase, however, as the location and dimensions of the easement remained the same. Only the *degree* of its use expanded, but such expansion was not an unreasonable burden. A reasonable increase in degree of use is thus permissible whereas an expansion of the original easement is not.

*Hash v. Sofinowski,* 337 Pa.Super. 451, 487 A.2d 32, 35–36 (1985). (Citations omitted emphasis in original).

In the case *sub judice,* we believe the principles of *Kuras, Jordan, Hill, Bodman* and *Hash* apply. Based on the evidence adduced at trial, the jury found that a prescriptive easement had been established over appellants' property for the benefit of the appellees.

█ At trial, the jury was instructed that in order to find a prescriptive easement, the corporations must have shown that they or their predecessors in interest must have used the right-of-way over the Mahoney's property in an adverse, exclusive and continuous or uninterrupted manner for 20 years. As to adverse use:

By *adverse* is meant a *user,* without license or permission, for an adverse right of an easement cannot grow out of a mere permissive enjoyment, the real point of distinction being between a permissive or tolerated user, and one which is claimed as a matter of right. Where one, however, has used a right of way for twenty years unexplained, it is but fair to presume the user is under a claim of right, unless it appears to have been by permission . . . .

*Kiler, supra,* 74 Md.App. at 639, 539 A.2d 1138 quoting *Zimmerman v. Summers,* 24 Md.App. 100, 106, 330 A.2d 722 (1975) (emphasis in original); *Cox v. Forrest,* 60 Md. 74, 78–80 (1883). There was evidence in the record, and before the jury, that the properties now owned by appellants and appellees were in common ownership in 1846. At some

point in 1846, the property now owned by appellants was conveyed and otherwise severed from the property of appellees at issue in this case. From the conveyance, it is apparent that the grantor of appellees' property, Jeremiah Ducker, believed that in conveying the property he retained the right to continue to use the road over appellants' property for access to Longnecker Road.

Additional evidence showed that a subsequent owner of appellees' property believed that she, too, had the right to use the road over appellants' property to get out to Longnecker Road. In 1889, Vilmina Weller conveyed by deed pertinent portions of appellees' property. The "Weller Deed" was introduced into evidence at trial. It is apparent from the language of the deed that Vilmina Weller believed she had rights in the road running from her property through appellants' property, and out to Longnecker Road.[2] Additionally, there was testimony that the corporations' immediate predecessor-in-title, Herbert W. Wirts, believed he and his family and their tenants, from 1929 to 1987, had a right to use the right-of-way. Wirts testified that he believed the Wirts family had an "undisputed right to use the road."

As to the other elements required to establish an easement by prescription, we reiterated in *Kiler, supra,* that:

By *exclusive,* the law does not mean that the right of way must be used by one person only, because two or more persons may be entitled to the use of the same way, but simply that the right should not depend for its enjoyment upon a similar right in others, and that the party claiming it exercises it under some claim existing in his favor, independent of all others....

---

**2.** The deed conveyed Weller's property "together with the buildings and improvements thereupon erected, made or being, and all and every other road ... and especially the right to the use of two roads, each to be of the width of 16 feet ... [including] the road running through the Baer property to the country road ..." The Baers are predecessors in title to the Mahoneys. All indications are that the "country road" referred to is Longnecker Road.

Nor does the law mean by "an uninterrupted and continuous enjoyment," that a person shall use the way every day for twenty years, but simply that he exercises the right more or less frequently, according to the nature of the use to which its enjoyment may be applied, and without objection on the part of the owner of the land, and under such circumstances as excludes the presumption of a voluntary abandonment on the part of the person claiming it.

*Id.* 74 Md.App. at 639–40, 539 A.2d 1138, citing *Zimmerman, supra* 24 Md.App. at 106, 330 A.2d 722. (Emphasis in original).

With regard to exclusive use, there is no evidence in the record as to the particular use of the property made by Jeremiah Ducker or Vilmina Weller. It seems safe to assume, however, that their respective rights to use the road did not in any perceivable way depend upon a similar right in others. From the language of their respective conveyances, it is apparent that the exercise of the right of use was under a claim independent of the right of others, and, therefore, exclusive. As to the Wirts family, Herbert Wirts testified that the right of his family to use the roadway emanated from a "deed that my father treasured." Wirts was referring to the Weller deed. Certainly, the Wirts family had what they believed was a unique claim to use the right-of-way. There is no indication that this right was at all dependent on a similar right existing in others.

As for the requirement of uninterrupted and continuous enjoyment, Wirts testified that from 1928 to 1987 the right-of-way was consistently used by his family and their tenants. After Herbert Wirts left the property in 1955, he continued to use the roadway to visit his father and sisters who did not leave until 1964. From 1929 to 1964, the Wirts family maintained a mailbox on Longnecker Road which they accessed regularly by travelling the roadway by car. Guests of the Wirts family arrived and departed by use of the roadway. After 1964, when none of the Wirts family regularly resided on the property, their tenants continued to

use the roadway in the same manner as did the Wirts family. In addition, after 1964, Herbert Wirts used the roadway to visit the farm "half-a-dozen times a year or more." Periodically, his sisters used the road to visit the farm to pick blackberries and "walk the farm." Moreover, workmen and farm laborers required by the tenants who worked the farm also used the roadway.

From this evidence, the jury could reasonably have found that a prescriptive easement existed over appellants' property. From this same evidence we conclude that, considering the principles enunciated in *Kuras, Jordan, Hill, Bodman* and *Hash,* the trial court did not err in defining the scope of the prescriptive easement.

■ The court found the right-of-way to be 16 feet wide and that appellees could repair and maintain the roadway. This finding was supported by evidence in the Weller deed that the roadway was 16 feet wide. It was also supported by testimony by one of the Wirts family tenants that fences were erected along the roadway at a width of from 18 to 20 feet in order to accommodate farm equipment which regularly travelled the roadway. Further, it was not erroneous to permit the increased use of the roadway. It was foreseeable that the property of appellees would be subdivided and the right-of-way required to bear an increased burden of use. The use permitted by the trial court was not unreasonable based on evidence of past use. The burden on the servient estate is appropriate. We perceive no error in the trial court's decision.

## II.

### SUBMISSION OF ISSUES TO JURY

At trial, the court submitted to the jury the question of whether a prescriptive easement existed over appellants' property for the benefit of appellees. Also submitted to the jury were the tort claims of appellees for injurious falsehood and civil conspiracy. The trial court refused, however, to submit to the jury separate questions as to the prescrip-

tive rights of the individual corporations; questions as to the appropriate width of the easement; the right of appellees to use the easement to access six residences; the right to pave the easement; and the right of appellants to maintain gates on their property to limit use of the roadway. Arguing that these matters were questions for the jury, appellants claim error. We do not agree.

■ Appellants first argue that the jury should have decided the scope of the easement because in finding that the prescriptive easement existed, they "necessarily" decided the scope of the right-of-way. Appellants cite *Bishields, supra,* for this proposition. We do not agree that *Bishields* supports appellants' contention. In that case, all that was said by the Court of Appeals was that "[t]he law is also clear that when an easement has been acquired by prescription, the character and extent of the permissible use are commensurate with and determined by the character and extent of the use during the prescriptive period." *Id.* 200 Md. at 625, 91 A.2d 922. The Court did not address the question of whether the trial judge or jury should make the ultimate determination. In passing, we note that a jury in making a determination that a way has been used in an adverse, exclusive and continuous and uninterrupted manner for 20 years, does not by necessity determine precise questions as to the past and future permissible scope of the easement.

Appellants cite *Susquehanna Transmission Co. of Maryland v. Murphy,* 131 Md. 340, 101 A. 791 (1917), for the proposition that the lower court should not have "substituted its own decision on factual issues for that of the jury." *Murphy* is inapposite. In *Murphy,* questions of fact were involved which the trial court indicated were properly within the province of the jury. These questions, surrounding plaintiff's alleged negligence, and not questions sounding in equity, involved the character, value and extent of injury to timber on property that had been burned, the value of the timber before and after the fire, the extent of the fire, and the direction and velocity of the wind at the time plaintiff's

property caught fire. *Id.* at 343, 101 A. 791. Clearly, the disputed questions of fact did not involve matters regarding the scope of the right to exercise an established property right. Rather, the questions in *Murphy* went to damages and breach of the standard of care owed by the defendant to the plaintiff.

Appellants argue further that this case presents an action "at law" and that all the claims are legal in nature. Appellants also contend under *Glorius v. Watkins*, 203 Md. 546, 548, 102 A.2d 274 (1953), that a declaratory judgment action does not necessarily make a cause of action equitable in nature. Alternatively, appellants urge that, even if the questions as to the scope of the easement were equitable in nature, all issues of fact common to legal and equitable claims must be submitted to the jury. Appellants cite *Higgins v. Barnes*, 310 Md. 532, 530 A.2d 724 (1987) for the latter proposition.

We are able to determine appellants' first proposition based on *Higgins*. We believe, however, that appellants' reliance on *Higgins* is misplaced.[3] In *Higgins*, and the cases cited therein, the issue was whether a defendant, in a suit seeking equitable relief, was entitled to a jury trial because his counterclaims raised issues traditionally subject to resolution by a jury. The Court of Appeals, in its ultimate reliance upon and analysis of federal law, observed:

> In the federal courts, then, the entitlement to jury trial is not determined simply by the characterization of the action as a whole as legal or equitable. If an asserted counterclaim presents a legal claim historically accorded the right to jury trial and raises factual issues in common with the plaintiff's equitable claim, the defendant is ordi-

---

**3.** Higgins concerned the impact of Rule 2–301, which eliminated the distinction between law and equity "for purposes of pleadings, parties, court sittings and dockets," on the right to a jury trial when legal and equitable claims were involved.

narily entitled to a jury determination of those factual legal issues.

*Id.* at 547, 530 A.2d 724. *See Beacon Theatres v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); *Myers v. United States Dist. Court, Etc.,* 620 F.2d 741 (9th Cir.1980); *Eldredge v. Gourley,* 505 F.2d 769 (3rd Cir.1974). In *Hashem v. Taheri,* 82 Md.App. 269, 272–73, 571 A.2d 837 (1990), a case involving the issues raised in *Higgins,* we cited P. Niemeyer and L. Richards, Maryland Rules Commentary at 125 (1984) for the proposition that, under *Higgins* "[i]f a claim is brought that historically would have been filed on the law side of the court and a jury trial is properly demanded, a jury will hear the case. Equitable claims will be decided by the court without a jury."

In the case before us, the counterclaims raised by appellants in their Complaint are not claims historically accorded the right to a jury trial. They sought a declaratory judgment as to the rights regarding the roadway and an injunction against appellees to use the road inconsistent with these rights. In *Leekley v. Dewing,* 217 Md. 54, 57–58, 141 A.2d 696 (1957), the Court of Appeals held that:

There was no error in the granting of the temporary injunction. The quondam rule that law must decide questions of title to land is far from inflexible, as the later cases make plain. *Where there is no reasonable doubt as to the title or the propriety of equitable action is evident, an equity court may act in cases involving title and enjoin continuing trespasses or declare rights as to ways. Southern Maryland Agr. Ass'n v. Meyer,* 196 Md. 31, 34 [75 A.2d 89]; *Potomac Edison Co. v. Routzahn,* 192 Md. 449, 456–58 [65 A.2d 580]; *Dalton v. Real Estate & Improvement Co.,* 201 Md. 34 [92 A.2d 585]; *Campbell v. Bishields,* 197 Md. 572 [80 A.2d 262]; *Moore v. McAllister,* 216 Md. 497 [141 A.2d 176]; *Lichtenberg v. Sachs,* 200 Md. 145 [88 A.2d 450]. (Emphasis added).

Since there was a reasonable doubt as to appellees' right to use the roadway, the matter was properly submitted to

the jury. The jury found that appellees had a prescriptive easement over appellants' property. Once the jury found the existence of the easement, we believe any doubt as to title was sufficiently cleared up so as to permit the presiding judge to "declare the rights" of appellees to use and improve the roadway.

■ Appellants' final contention is that the trial court should have submitted the issues surrounding the scope of the easement to the jury because the issues were common to appellants' tort claims for injurious falsehood and civil conspiracy. In their brief, appellants concede that the question in common between the declaratory judgment and damage claims was the existence of the easement. As the record indicates, the jury did, in fact, decide the legal issue of whether the easement existed. As a result, appellants cannot now claim that "for the jury to properly determine whether the Mahoneys were guilty of injurious falsehood and civil conspiracy, it was necessary for the court to submit questions on the extent of the easement" to the jury.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.